# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**STEVEN C. LITZ**
Monrovia, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

FILED

Jun 11 2012, 9:51 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL PHELPS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 55A01-1108-CR-410 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MORGAN SUPERIOR COURT
The Honorable Christopher Burnham, Judge
The Honorable G. Thomas Gray, Judge
Cause No. 55D01-1104-FA-451
Cause No. 55D02-1103-JD-130

June 11, 2012

**OPINION - FOR PUBLICATION**

**FRIEDLANDER, Judge**

Michael Phelps appeals from his conviction of and sentence for Attempted Murder[1] as a class A felony. Phelps presents the following consolidated and restated issues for our review:

1. Did the trial court with juvenile court jurisdiction abuse its discretion by waiving its jurisdiction?

2. Did the trial court with juvenile court jurisdiction err by denying Phelps's motion to close the proceedings?

3. Did the trial court commit reversible error by denying Phelps's motion for change of venue after jurisdiction had been waived?

4. Is Phelps's sentence inappropriate in light of the nature of the offense and the character of the offender, or otherwise in violation of the state and federal constitutional prohibitions against cruel and unusual punishment?

We affirm.

Phelps began attending Martinsville West Middle School in 2007 upon entering the sixth grade. During that school year, Phelps accumulated twenty-four disciplinary referrals from five different staff members. Three involved altercations with other students and twenty-one were for refusing to cooperate with authority figures. The school attempted to modify Phelps's behavior through an array of disciplinary actions.

Phelps was retained in the sixth grade because of his failing grades, which were the result of a lack of effort rather than an inability to master the content. During his second year of sixth grade, Phelps had five disciplinary referrals from four different staff members, two of which were for altercations with other students and three of which were for failure to cooperate with authority figures.

---

[1] Ind. Code Ann. § 35-42-1-1 (West, Westlaw current through legislation effective May 31, 2012) (murder); Ind. Code Ann. § 35-41-5-1 (West, Westlaw current through legislation effective May 31, 2012) (attempt).

In the seventh grade, Phelps had thirteen disciplinary referrals, one of which involved an altercation with other students and twelve of which were for refusal to cooperate with authority figures. The school repeated its attempt to use a variety of measures such as student conferences, calling home, meeting with parents, after-school-detention, and in-school suspension, among others, to correct Phelps's behavior. Phelps received an out-of-school suspension and was not allowed on school property for a period of time. The principal and other school officials communicated with Phelps's mother numerous times about her son's behavior. Phelps did not show a willingness to comply with school rules after receiving a disciplinary referral.

In the 2010-2011 school year Phelps was in the eighth grade. During that school year Phelps had eight disciplinary referrals from five different staff members. One of those referrals was for an altercation with other students and several other referrals were for refusing to cooperate with authority figures. On October 14, 2010, Phelps received his first referral to the juvenile system for truancy. He was placed on an informal adjustment for a period of three months. On November 29, 2010, Phelps made threats and punched another student in the face.

Two subsequent petitions were filed alleging that Phelps was delinquent for being in possession of paraphernalia. Phelps was adjudicated a delinquent and was placed on formal probation for six months. The very next day, Phelps received a disciplinary referral at school for rude and discourteous behavior. The day after that, Phelps received a disciplinary referral after he said he was going to blow up the school. Based on these referrals, the probation department filed a probation violation.

Phelps was suspended from school for ten days following his statement that he was going to blow up the school. The principal informed Phelps that his statement was taken seriously and they discussed Phelps's other referrals and his decision not to be a serious student. Phelps was notified that he was not allowed on school property. The principal further informed Phelps that school officials were also recommending his expulsion from school in addition to the period of suspension.

On March 17, 2011, Phelps's mother contacted the school to withdraw Phelps from school so that he could begin homeschooling. On March 22, 2011, Phelps's mother returned his text books to the school, ensured that he had no pending fines, and completed the paperwork necessary for withdrawal. The principal informed Phelps's mother that because he had withdrawn from school during a pending disciplinary action, Phelps would be considered a suspended student if he were to reenroll there.

During the period of suspension, Phelps spent time with his friend, Jeff Bunch. Phelps indicated that he wanted to steal a gun. Phelps subsequently stole a gun from the home of his former step-father, Andy Flanningan.

Phelps and another student at the middle school, Chance Jackson, did not get along with one another and had not for some time. Phelps had taunted Jackson on several occasions, and had attempted to engage him in a fight. Jackson, however, refused to fight Phelps.

Natalie Arnold had dated both Phelps and Jackson. Two weeks prior to March 25, 2011, Arnold saw Phelps at school. Arnold knew that Phelps was not supposed to be on school property and asked Phelps what he was doing. Phelps told her that he had some

4

business to take care of and later showed Arnold a firearm. When Arnold inquired why Phelps had a gun, Phelps told her it was for her protection. On a separate occasion, Phelps sent a text message to Arnold stating that he wanted to shoot Jackson. Phelps and Arnold sent several text messages to one another, during one of which, Arnold asked Phelps to promise that he would not shoot Jackson.

A week to ten days prior to March 25, 2011, Darian Hoskins spoke with Phelps. Hoskins gave Phelps a hug and felt something in Phelps's waistband. Hoskins asked Phelps what was in his waistband and Phelps replied that it was a gun. Phelps pulled out a black and silver firearm from the front of his pants and displayed it to Hoskins. Phelps also removed bullets from his pocket and showed them to Hoskins. Hoskins inquired why Phelps had a gun, and Phelps told him that he was having trouble with a kid at school named Chance. Phelps told Hoskins that he was going to shoot Chance at school.

On March 25, 2011, when Jeff Bunch arrived at school, Phelps was there and was asking if anyone had seen Chance Jackson. Phelps and Bunch started to enter the middle school, but turned around after Phelps indicated that there were too many people in there. Phelps and Bunch then entered a vestibule area where they found Jackson. Phelps stated to Jackson, "I hear you've been talking shit about me." *Trial Transcript* at 36. Jackson replied, "No, I've been trying to avoid you." *Id.* at 73. Phelps told Jackson that was not what he had heard, to which Jackson replied, "Well, you heard wrong." *Id*. Phelps said, "So why won't you fight me." *Id*. Jackson stated that there was no reason to fight and that fighting would not solve anything. Jackson also told Phelps that he did not want to get kicked out of school.

5

Phelps replied, "Too bad, bitch." *Id.* Phelps then pulled out the black and silver firearm and shot Jackson twice in the abdomen. After the shooting, Phelps ran off, followed by Bunch.

Martinsville Police Officer Brian Chambers arrived at the school, which was at that time in complete lockdown. Due to the emergency and uncertainty if the assailant or assailants had additional plans, the children were required to sit on the floor in their classrooms. All the lights were turned off and the blinds were pulled while the SWAT team searched the school.

Jackson had sustained two gunshot wounds to his abdomen. Jackson told Officer Dawn Hoffman of the Martinsville Police Department that Phelps had shot him. Jackson was then transported via Lifeline to Methodist Hospital in Indianapolis.

Bunch returned to the school and told police officers there that Phelps had tossed the firearm into a wooded area. Phelps was apprehended by Officer Blake Long near an elementary school. Phelps tested positive for marijuana when he was admitted to the detention center.

On March 28, 2011, the State filed a petition alleging that Phelps was a delinquent child. Thereafter, the State filed a motion to waive juvenile-court jurisdiction. A two-day hearing was held on the State's motion at the conclusion of which the trial court took the matter under advisement. On April 25, 2011, the juvenile court held a hearing, during which it announced its findings and waived jurisdiction.

On April 26, 2011, the State charged Phelps with one count of attempted murder a class A felony, one count of aggravated battery as a class B felony, one count of carrying a handgun without a license on school property as a Class C felony, one count of trespassing

6

on school property as a class D felony, possession of a firearm on school property as a class D felony, and one count of theft as a class D felony. On May 4, 2011, Phelps filed a motion for a change of venue, which was ultimately granted by the trial court.

Jury selection was held in Clay County. During voir dire, counsel for Phelps told the jury that the defense theory of the case was that although Phelps had shot Jackson, he had not intended to kill him. Several prospective jurors disagreed with the premise that a person could shoot another person twice without intending to kill the person. Phelps moved for another change of venue, to which the State objected. The trial court took the matter under advisement, deferring decision on the motion until further questioning of the prospective jurors had been completed.

After conferring with Phelps, Phelps's counsel informed the trial court that Phelps wished to waive his right to a jury trial. After questioning Phelps, the trial court found that he was knowingly and voluntarily waiving his right to a jury trial. A bench trial was held on July 11, 2011, at which time the State dismissed all counts except for the count alleging attempted murder. The trial court found Phelps guilty of that count and sentenced him to thirty-five years executed with five years suspended and five years of probation. Phelps now appeals. Additional facts will be supplied where necessary.

1.

Phelps argues that the trial court having juvenile court jurisdiction abused its discretion by waiving that jurisdiction. In particular, Phelps contends that the State failed to establish that Phelps was beyond the rehabilitative resources of the juvenile system. Phelps

7

asserts that he presented uncontroverted testimony that facilities were available that could address Phelps's problems yet ensure the safety of the community.

Ind. Code Ann. § 31-30-3-2 (West, Westlaw current through legislation effective May 31, 2012) (the Waiver Statute) provides in relevant part as follows:

> Upon motion of the prosecuting attorney and after full investigation and hearing, the juvenile court may waive jurisdiction if it find that:
>
> > (1) the child is charged with an act that is a felony:
> >
> > > (A)  that is heinous or aggravated, with greater weight given to acts against the person than to acts against property; or
> > >
> > > (B) that is a part of a repetitive pattern of delinquent acts, even though less serious;
> >
> > (2) the child was at least fourteen (14) years of age when the act charged was allegedly committed;
> >
> > (3) there is probable cause to believe that the child committed the act;
> >
> > (4) the child is beyond rehabilitation under the juvenile justice system; and
> >
> > (5) it is in the best interests of the safety and welfare of the community that the child stand trial as an adult.

We review the sufficiency of a particular waiver order in much the same way we review all sufficiency cases.  We will not weigh the evidence or judge the credibility of witnesses. *K.M. v. State*, 804 N.E.2d 305 (Ind. Ct. App. 2004).  We look only to the evidence favorable to the State and the reasonable inferences to be drawn therefrom considering both the record established in the waiver hearing and the findings of fact stated by the trial court.  *Id*.

Juvenile proceedings, unlike criminal proceedings, are civil in nature and the burden is on the State to establish by a preponderance of the evidence that juvenile jurisdiction should

8

be waived. *Id*. We review the juvenile court's decision to waive its jurisdiction for an abuse of discretion. *Id*. The juvenile court is entitled to give the evidence before it whatever weight it deems appropriate. *Id*.

We note at the outset that Phelps claims the trial court abused its discretion by making reference to the charged counts in addition to attempted murder and aggravated battery in its finding that Phelps engaged in a repetitive pattern of delinquent acts. Phelps argues that all of the charges related to the shooting did not constitute the repetitive commission of delinquent acts. The Waiver Statute, however, requires proof that the child committed an act that is a felony that is heinous or aggravated *or* part of a repetitive pattern of delinquent acts. Phelps agrees on appeal that the crimes of attempted murder and aggravated battery are especially heinous. Consequently, since the Waiver Statute is written in the disjunctive, and Phelps does not challenge the heinousness of the crimes with which he was charged, we find no abuse of discretion on that basis.

Phelps's main contention is that the trial court abused its discretion in finding that he is beyond rehabilitation under the juvenile justice system. At the waiver hearing, Phelps presented the testimony of a psychologist, a minister of a residential facility, and two others who indicated that Phelps could benefit from programs in the juvenile justice system and that he was amenable to treatment. The State, on the other hand, presented the testimony of a juvenile probation officer, Brent Fultz, that Phelps was beyond rehabilitation in the juvenile justice system. Fultz was not aware of any residential placement facilities that would be willing to take on the liability of having Phelps placed there. Fultz, who had supervised

9

several thousand juvenile probationers, stated that he assessed the seriousness of Phelps's crime as a nine on a scale of one to ten, with ten being the most serious.

The State elicited testimony from the minister of the residential facility that the facility was not a secure facility and did not accept individuals who had committed crimes of violence. The minister agreed that Phelps did not qualify for his program. The psychologist who testified on Phelps's behalf also stated that Phelps reacts angrily in many different situations and strikes out in anger when he feels threatened. He also testified that many people who have dysfunctional, troubled upbringings, such as Phelps's, do not attempt to kill someone. The psychologist further testified that there was no significant difference in an adolescent who was sixteen years old and one who was fifteen years and eleven months old.

We conclude that Phelps's argument amounts to an invitation to reweigh the evidence and reassess the credibility of witnesses, tasks our standard of review forbids us from undertaking. *K.M. v. State*, 804 N.E.2d 305 (Ind. Ct. App. 2004). "The juvenile court in holding the waiver hearing is not compelled to give overriding weight to testimony that supports a finding the juvenile should remain in the juvenile system." *Gerrick v. State*, 451 N.E.2d 327, 330 (Ind. 1983).

Phelps also argues that the trial court abused its discretion by finding that Phelps's waiver from juvenile court jurisdiction was in the best interests of the safety and welfare of the community. Again, Phelps points to the testimony of the psychologist who testified on his behalf during the hearing. The psychologist stated that Phelps had not demonstrated serious violent tendencies with anyone else, was never violent with females or family, and was never violent toward adults. The trial court had before it, however, the evidence set

10

forth above outlining Phelps's pattern of disciplinary problems at school and the school's myriad efforts to help Phelps adjust his behavior, all to no avail. We will not reweigh the evidence or reassess witness credibility. The trial court did not abuse its discretion in finding that the State had met its burden of establishing this factor.

In sum, we find that the trial court did not abuse its discretion by finding that the State had met its burden by a preponderance of the evidence of establishing that the juvenile court should waive its jurisdiction. The challenges presented here on appeal pertain to the weight of the evidence. There was sufficient evidence before the juvenile court to support its decision.

2.

Phelps claims that the trial court erred by denying his request that the juvenile waiver hearing be closed to the public. Phelps asks this Court to clarify the interaction between Ind. Code Ann. § 31-32-6-3 (West, Westlaw current through legislation effective May 31, 2012) (Open Proceedings Statute) and I.C. § 31-32-6-4 (West, Westlaw current through legislation effective May 31, 2012) (Closed Proceedings Statute).

The Open Proceedings Statute provides that a delinquency proceeding in which a child is alleged to have committed an act that would be murder or a felony if committed by an adult is open to the public. I.C. § 31-32-6-3. The Open Proceedings Statute, however, provides for an exception under the Closed Proceedings Statute. Under section 4, upon a motion by the State, the child, the child's guardian ad litem, counsel, parent, guardian, or custodian, the juvenile court may issue an order closing a proceeding during the testimony of

11

a health care provider under certain circumstances. I.C. § 31-32-6-4 (West, Westlaw current through legislation effective May 31, 2012).

The State contends, and Phelps appears to acknowledge, that since the trial court denied the request to close the proceedings, and the proceedings remained open to the public, the question here is moot. There is no relief from the trial court's ruling that can be afforded Phelps on appeal. This court will not engage in discussions of moot questions. *See Richardson v. State*, 402 N.E.2d 1012 (Ind. Ct. App. 1980) (appellate court does not engage in discussion of moot questions or render advisory opinions).

That said, we note that the Closed Proceedings Statute provides that the trial court *may* issue an order to close the proceeding during a health care provider's testimony. Inherent within the statutory language is the discretion provided the trial court in reaching that decision. The legislature has not spoken on the issue of whether a party may waive the possibility of closed proceedings by calling a witness to testify as to privileged matters in this context. We do not offer an opinion on this topic and find no juvenile trial court error in the exercise of its discretion to keep the waiver proceedings open.

3.

Phelps contends that once jurisdiction was waived, and the jury venire was being selected, the trial court erred by denying his second motion for change of venue. During voir dire, Phelps's counsel advanced the defense theory that although Phelps shot Jackson twice, he did not intend to kill him. Several of the prospective jurors rejected that premise. Phelps's counsel moved for a change of venue, to which the State objected. The trial court advised counsel that the motion would be taken under advisement. Defense counsel

12

conferred with Phelps and informed the trial court that Phelps was waiving his right to a jury trial. The trial court questioned Phelps, determined that the waiver was knowingly and voluntarily made, and proceeded with a bench trial.

Our Supreme Court has held that a trial court has the discretion to postpone ruling on a motion for change of venue pending voir dire. *Davidson v. State*, 580 N.E.2d 238 (Ind. 1991). We review a trial court's decision on a motion for change of venue for an abuse of discretion. *Id.* Here, Phelps waived his right to jury trial without allowing the trial court the opportunity to rule on his motion. As a consequence, Phelps has failed to preserve this issue for our review. "Error can only be predicated on questions presented to and ruled upon by the trial court." *Wells v. State*, 441 N.E.2d 458, 463 (Ind. 1982). Because the motion for change of venue was withdrawn from the trial court prior to a ruling thereon, no error has been preserved for our review.

4.

Phelps asserts that his thirty-five-year sentence for his attempted murder conviction is inappropriate in light of the nature of the offense and the character of the offender. As such, he asks this court to revise his sentence under Ind. Appellate Rule 7(B). He also contends that his sentence is violative of federal and state constitutional prohibitions against cruel and unusual punishment.

Although framed primarily as an App. Rule 7(B) argument, Phelps appears to argue that the trial court abused its discretion in the weight given to the aggravating circumstances and the mitigating circumstance of his remorse for his crime. He also appears to argue that the trial court failed to find Phelps's mental health issues as a mitigating circumstance. In

13

addition to the constitutional arguments raised by Phelps we will consider his sentence under an abuse of discretion standard and inappropriateness standard of review. The sentencing range for a class A felony conviction is a fixed term of between twenty and fifty years, with the advisory sentence being thirty years. Ind. Code § 35-50-2-4 (West, Westlaw current through legislation effective May 31, 2012).

Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State,* 868 N.E.2d 482 (Ind. 2007) *clarified on reh'g*, 875 N.E.2d 218. An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id*. at 490. The trial court can abuse its discretion by (1) issuing an inadequate sentencing statement, (2) finding aggravating or mitigating factors that are not supported by the record, (3) omitting factors that are clearly supported by the record and advanced for consideration, or (4) by finding factors that are improper as a matter of law. *Laster v. State,* 956 N.E.2d 187 (Ind. Ct. App. 2011).

The trial court identified the following aggravating factors when sentencing Phelps: (1) The offense occurred in the presence of other children; (2) Phelps shot Jackson twice; (3) Phelps had stolen a gun before he committed the crime in this case; (4) Jackson's injuries were substantial and long-term; and (5) Phelps made a deadly weapon in jail after he was incarcerated for this crime. Phelps does not dispute the validity of any of the aggravating factors found by the trial court, but instead argues that only the aggravating circumstance of Jackson's substantial injuries should carry significant weight. Because a trial court can no

14

longer abuse its discretion by failing to properly weigh aggravating and mitigating factors, we find no abuse of discretion in regard to the aggravating circumstances found. *See Anglemyer v. State*, 868 N.E.2d 482. (no abuse of discretion in failing to properly weigh aggravating and mitigating factors).

As for the mitigating factors, Phelps argues that the trial court omitted mitigating factors including his mental health, Jackson's role in inducing the offense, and Phelps's acceptance of responsibility and remorse for his actions. When the allegation is that the trial court failed to identify or find a mitigating factor, the defendant is required to establish that the mitigating evidence in not only supported by the record, but that the mitigator is significant. *Id.* Where the trial court does not find the existence of a mitigating factor after it has been argued by counsel, the trial court is not obligated to explain why it has found that the factor does not exist. *Id.*

Phelps did not establish a nexus between his mental health issues and the shooting of Jackson. The psychologist Phelps called to testify about his mental health issues stated that none of Phelps's mental health issues affected his ability to control his behavior. Thus, the trial court did not err by failing to find Phelps's mental health issues to be a significant mitigating factor. *See Lopez v. State*, 869 N.E.2d 1254 (Ind. Ct. App. 2007) (no trial court error in questioning the extent to which mental illness was in control of the defendant's behavior and caused her to commit her crimes).

Phelps argues that Jackson's role in inducing the offense should have been found as a mitigating factor. Phelps contended that Jackson spread personal information about Arnold, who had been the girlfriend of each boy at some period of time. Jackson supposedly used a

15

nickname for Arnold, which directly made reference to that personal information. Phelps argues that Jackson's actions in that regard explain Phelps's anger toward Jackson, and that the trial court abused its discretion by not finding this mitigating factor. The psychologist who testified in this trial, however, stated that he had discussed with Phelps the alleged rumor being spread by Jackson about Arnold, and asked Phelps to what degree that might have contributed to his shooting Jackson. Phelps indicated that the trouble between Jackson and Arnold had very little to do with the shooting. He indicated that his own feelings of anger toward Jackson were the primary basis for the shooting. We cannot say that the trial court abused its discretion by omitting this proffered mitigating factor.

Phelps also contends that the trial court should have found his remorse to be a significant mitigating factor. A trial court is under no obligation to accept a defendant's alleged remorse as a mitigating circumstance. *Manns v. State*, 637 N.E.2d 842 (Ind. Ct. App. 1994). The trial court possesses the ability to directly observe a defendant and can best determine whether a defendant's remorse is genuine. *Mead v. State*, 875 N.E.2d 304 (Ind. Ct. App. 2007). Substantial deference must be given to the trial court's evaluation of a defendant's remorse. *Id*. We find no abuse of discretion in the trial court's treatment of this proffered mitigating circumstance.

Turning now to Phelps's argument that his sentence is inappropriate, we note that we have the constitutional authority to revise a sentence if, after careful consideration of the trial court's decision, we conclude the sentence is inappropriate in light of the nature of the offense and character of the offender. *See* Ind. Appellate Rule 7(B); *Anglemyer v. State*, 868 N.E.2d 482. Even if a trial court follows the appropriate procedure in arriving at its sentence,

16

we maintain the constitutional power to revise a sentence we find inappropriate. *Hope v. State*, 834 N.E.2d 713 (Ind. Ct. App. 2005). Although we are not required under App. R. 7(B) to be "extremely" deferential to a trial court's sentencing decision, we recognize the unique perspective a trial court bring s to such determinations. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). On appeal, Phelps bears the burden of persuading us that his sentence is inappropriate. *Rutherford v. State*, 866 N.E.2d 867.

As for the nature of the offense, we observe that Phelps stole a handgun from his former step-father, Andy Flanningan. Phelps showed the handgun to others in the period of time leading up to the shooting. Phelps entered onto school property, from which he had been banned, and did so just as school was about to begin for the day. Other students were present at the school then and observed Phelps on school property. Phelps sought out Jackson and then shot him twice after a brief verbal altercation between the two. Phelps then fled the scene, discarding his jacket in order to conceal his identity, and discarded the still-loaded handgun along the way. We cannot say that the slightly enhanced sentence for attempted murder is inappropriate in light of the nature of the offense.

As for the character of the offender, we observe that Phelps had much difficulty with complying with the direction of authority figures at his school. He displayed an inability to control or curb his anger. Phelps, who had the intellectual ability to succeed at school, chose not to take advantage of those opportunities, especially in light of his substance-abuse-ridden family setting. Phelps himself suffered from substance-abuse issues. Phelps refused to take advantage of the rehabilitative efforts offered by people within his school system. We cannot

17

say that the slightly enhanced sentence for attempted murder is inappropriate in light of the character of the offender.

We now turn to Phelps's constitutional claims regarding his sentence. Phelps contends that his sentence of thirty-five years with five years suspended to probation for attempted murder is cruel and unusual punishment under article 1, section 16 of the Indiana Constitution and the Eighth Amendment to the federal constitution. A penalty is disproportional under article 1, section 16 of the Indiana Constitution only when the criminal penalty is not graduated and proportioned to the nature of the offense. *Conner v. State*, 626 N.E.2d 803 (Ind. 1993). "The constitutional prohibition against cruel and unusual punishments proscribes atrocious or obsolete punishments and is aimed at the kind and form of the punishment, rather than the duration or amount." *Ellis v. State*, 736 N.E.2d 731, 736 (Ind. 2000). Here, the record reveals that the trial court took great care in arriving at Phelps's sentence. Our Supreme Court has held that a thirty-year sentence imposed for a sixteen-year-old's conviction for the crime of attempted robbery did not constitute cruel and unusual punishment. *See Douglas v. State*, 481 N.E.2d 107 (Ind. 1985). We find no violation here of article 1, section 16 of the Indiana Constitution.

The Eighth Amendment of the federal constitution proscribes grossly disproportionate punishments. *Solem v. Helm*, 463 U.S. 277 (1983). Our focus is upon whether Phelps's case is "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *U.S. v. Gross*, 437 F.3d 691, 692-93 (7th Cir. 2006), *cert. denied*, 548 U.S. 913 (2006) (quoting *Ewing v. California*, 538 U.S.

11 (2003)). We find nothing unusual about a thirty-five year sentence, with five years suspended, for a conviction of attempted murder.

Judgment affirmed.

MAY, J., and BARNES, J., concur.