## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 17 2015, 7:38 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Patrick J. Smith
Bedford, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Timothy L. Bye,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 17, 2015

Court of Appeals Case No.
59A01-1504-CR-141

Appeal from the Orange Circuit Court

The Honorable Larry R. Blanton, Judge

Trial Court Cause No.
59C01-1306-FB-410

**Kirsch, Judge.**

[1] Timothy L. Bye pleaded guilty to sexual misconduct with a minor[1] as a Class B felony and was sentenced to fifteen years with ten years executed and five years suspended to probation. Bye appeals his sentence, raising the following restated issues:

> I. Whether the trial court abused its discretion when it did not find that Bye's remorse and guilty plea were significant mitigating factors; and

> II. Whether Bye's sentence is inappropriate in light of the nature of the offense and the character of the offender.

[2] We affirm.

## Facts and Procedural History[2]

[3] On June 18, 2013, at approximately 11:45 a.m., Paoli Fire Chief Dutch Parks ("Chief Parks") called Paoli Police Chief Randall Sanders ("Chief Sanders") to report that he saw a young female, later identified as J.C., and an older male, later identified as Bye, together at Radcliff Park "sitting in the grass near the weeds/tree line." *Appellant's App.* at 13. Chief Parks stated that Bye appeared to be having "inappropriate contact" "with the young female" and asked Chief Sanders to "check on the child." *Id*.

---

[1] *See* Ind. Code § 35-42-4-9. We note that, effective July 1, 2014, a new version of this criminal statute was enacted. Because Bye committed his offense prior to July 1, 2014, we will apply the statute in effect at the time he committed his crime.

[2] Because the factual basis at the change of plea hearing consisted of just the elements of the offense, we include facts also found in the State's probable cause affidavit and Bye's testimony at the sentencing hearing.

[4] Chief Sanders and Officer Scott Dillman ("Officer Dillman") immediately went to the park to investigate. As they approached, Officer Dillman could see that J.C. was sitting on Bye's lap and that Bye had his hand on J.C.'s leg. Chief Sanders was familiar with Bye and knew he was approximately forty years old. Being unfamiliar with the female, Chief Sanders asked her name and age. J.C. provided her name and said she was eighteen years old. When Chief Sanders asked J.C. a second time how old she was, J.C. admitted she was only fifteen.

[5] Chief Sanders took J.C. to his patrol car, contacted her mother ("Mother"), and asked Mother to come to the park. Officer Dillman stayed with Bye, who told Officer Dillman that he met J.C. on Facebook and had been seeing her for two weeks. Bye stated that J.C. told him she was eighteen years old, they had been meeting in the park, and Mother knew that Bye and J.C. were meeting. When Mother arrived at the park, she told Chief Sanders that she had met Bye just a few weeks earlier, had told him that J.C. was only fifteen years old, and had given permission for J.C. and Bye to talk as friends. Mother related that she told Bye that, if he wanted a relationship with J.C., he would have to wait until she turned eighteen years old. J.C. reported that she and Bye had never had sexual intercourse, but that he had fondled her breasts and "privates," at first over her clothing and then under her clothing. J.C. further stated that, a few days earlier, Bye had inserted his finger into her vagina while they were in the park.

[6] Based on the information obtained from Mother and J.C., Chief Sanders asked Officer Dillman to detain Bye. Bye then admitted that he knew J.C. was only

fifteen years old, and Officer Dillman transported Bye to the Paoli Police Department to be interviewed. Bye initially denied having any contact with J.C. other than hugging and kissing her. However, when Officer Dillman confronted him with J.C.'s statement, Bye changed his story and admitted that he fondled J.C. and penetrated her vagina with his fingers while they were at the park two to three days earlier.

[7] On June 19, 2013, the State charged Bye with one count of Class B felony sexual misconduct with a minor. Sixteen months later, on October 14, 2014, Bye pleaded guilty, without the benefit of a plea agreement, and judgment of conviction was entered on the same day. At sentencing, Bye admitted that he had a previous conviction for Class D felony neglect of a dependent. Bye noted that he and his ex-wife have "joint custody" of their seven children and that he worked and helped provide for his children. *Tr.* at 28. Bye maintained that his abuse of alcohol and drugs, including methamphetamine, marijuana, and prescription drugs, affected his judgment, resulting in his seeking a sexual relationship with a fifteen-year-old girl. *Id.* at 35. Even so, Bye insisted that he spent "this time in jail to get past all the cravings and the withdrawal symptoms of the dope"; therefore, Bye "believe[d]" that upon his release, he "will be able to go back to work and [] will be able to stay off of the dope." *Id.* at 28. Bye claimed as mitigating factors that he "has a relatively low criminal history," he pleaded guilty, the crime was unlikely to reoccur, further incarceration would put undue hardship on his children, he was no longer dependent on drugs or alcohol, he had a steady job for the prior three years, and he apologized and

took responsibility for his crime. *Id*. at 41, 42. Bye asked for an eight-year sentence with two years suspended, for an aggregate executed sentence of six years, which was the minimum sentence for a Class B felony conviction.

[8] The State argued that it was an aggravating circumstance that Bye was on probation for felony neglect of a dependent when he committed this crime. Moreover, the neglect of a dependent conviction involved Bye preying on another person in the community, which in that case was an older relative who did not have the mental capacity to care for himself. The State insisted that it was significant that in both his prior offense and the current crime Bye preyed on the vulnerable, and that his two crimes had occurred within a short period of time. The State also maintained that it was an aggravating factor that Bye was forty years old and blaming his substance abuse problem for his actions. In response to Bye's request that his executed sentence be reduced to the minimum sentence of six years, the State contended that the imposition of a reduced sentence and imposition of probation would depreciate the seriousness of the crime. Further, the State asserted that counseling for substance abuse and "some sort of sexual [] counseling" could best be addressed in the Department of Correction. *Id*. at 46. The State asked the trial court to impose the maximum sentence of twenty years.

[9] During sentencing, the trial judge discussed Bye's alleged care and support of his family, noting that his eighteen-year-old son was in the same jail as his father, and that "a couple of the middle children" had also appeared before the judge on different matters. *Id*. at 51. Addressing Bye's substance abuse

problem, the trial court stated that it was his own doing, and that no one had forced him to use marijuana and methamphetamine or to abuse alcohol and prescription drugs. The trial court first revoked Bye's probation on his former conviction and ordered him to serve 170 days. As to the instant offense, the trial judge found no specific aggravating or mitigating circumstances, but stated, "I have read the file. I have read the police reports. I have read the depositions that were given and the interviews that were taken." *Id*. at 51. Having heard the testimony during sentencing, the trial court sentenced Bye to fifteen years with ten years executed and five years suspended to supervised probation, to be served consecutive to the 170-day-sentence. The trial court also recommended to the Department of Correction that Bye's time be served in a therapeutic community. Bye now appeals.

# Discussion and Decision

## I. Abuse of Discretion

[10] Bye challenges the trial court's failure to find his remorse and his guilty plea as significant mitigating factors for sentencing. Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind.2007). So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id*. An abuse of discretion will be found where the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Westlake v. State*, 987 N.E.2d 170, 175 (Ind. Ct. App. 2013). "A trial court may

abuse its discretion in sentencing by failing to enter a sentencing statement, entering a sentencing statement that explains reasons for imposing a sentence which the record does not support, omitting reasons that are clearly supported by the record and advanced for consideration, or giving reasons that are improper as a matter of law." *Id.* (citing *Anglemyer*, 868 N.E.2d at 490-91).

[11] Bye contends that the trial court abused its discretion when it did not find his remorse to be a significant mitigating factor. "Our courts have recognized remorse as a valid mitigating circumstance." *Cotto v. State*, 829 N.E.2d 520, 526 (Ind. 2005). "An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record." *Anglemyer*, 868 N.E.2d at 493. "A trial court is under no obligation to accept a defendant's alleged remorse as a mitigating circumstance." *Phelps v. State*, 969 N.E.2d 1009, 1020 (Ind. Ct. App. 2012), *trans. denied*. Further, "[w]here the trial court does not find the existence of a mitigating factor after it has been argued by counsel, the trial court is not obligated to explain why it has found that the factor does not exist." *Id.* at 1019.

[12] Bye claims that the "the record was replete with evidence in support of a finding of remorse." *Appellant's Br.* at 13. As support for his claim, Bye states he "actually expressed remorse and apologized for his crime at his sentencing

hearing." *Id*. Bye's sole expression of remorse arose in response to his attorney's questioning on re-direct.[3] That colloquy was as follows:

> Q. And, and I think you said this before but I want to make it clear, are you, are you sorry for what happened and you want to tell everyone. . .
>
> A. (interjecting) Yeah, yeah, I'm sorry for what happened. You know, I wish I could take it back but I can't. I can't change the past.

*Tr*. at 36-37. The State responded to Bye's claim of remorse, stating:

> It is the State's position that the, uh aggravating circumstances clearly outweigh the, uh, mitigating circumstances. [Defense] Counsel said that the defendant makes no excuses for what happened, well that's the first thing we heard was an excuse. Uh, that, you know, it was the drugs and alcohol, anything that he could, uh, what was it, uh, snort or smoke but he wouldn't, he wouldn't shoot up. Well that's the first thing he said. And I want the court to make [a] decision whether his, uh, uh, his apology, I don't know if it was an apology but whether his remorse is sincere or not.

*Id*. at 46-47. The trial court did not find that remorse was a mitigating factor; however, once Bye's claim was argued by counsel, "the trial court [was] not obligated to explain why it [] found that the factor does not exist." *Phelps*, 969 N.E.2d at 1019.

---

[3] Our search of the transcript revealed no other instance where Bye said he was sorry or expressed remorse.

[13]    "We recognize that substantial deference must be given to a trial court's evaluation of remorse." *Sharkey v. State*, 967 N.E.2d 1074, 1079 (Ind. Ct. App. 2012). "Remorse, or lack thereof, by a defendant is something better guarded by a trial judge who views and hears a defendant's apology and demeanor firsthand and determines the defendant's credibility." *Id*. (citing *Phelps*, 914 N.E.2d at 293). Bye has not persuaded us that the trial court abused its discretion when it failed to find his remorse was a significant mitigating factor.

[14]    Bye also contends that the trial court abused its discretion when it failed to find his guilty plea was a significant mitigating factor. Our court has said, "[A] defendant who pleads guilty deserves to have at least some mitigating weight extended to the guilty plea in return." *Lavoie v. State*, 903 N.E.2d 135, 143 (Ind. Ct. App. 2009). However, a guilty plea does not automatically amount to a significant mitigating factor. *Wells v. State*, 836 N.E.2d 475, 479 (Ind. Ct. App. 2005), *trans. denied*. "A plea's significance is reduced if it is made on the eve of trial, if the circumstances indicate the defendant is not taking responsibility for his actions, or if substantial admissible evidence exists against the defendant." *Caraway v. State*, 959 N.E.2d 847, 853 (Ind. Ct. App. 2011), *trans. denied*.

[15]    Bye was charged in June 2013, and the trial court scheduled his jury trial for November 12, 2013. Bye requested and received numerous continuances over the year that followed. As late as a pre-trial conference held on September 29, 2014, Bye gave no indication of any intent to plead guilty. It was not until the trial court held a second pre-trial conference on October 14, 2014 that Bye entered his plea of guilty. That date was almost sixteen months after Bye was

charged and eleven months after the initial date for his jury trial. During this time, the State was required to provide discovery to Bye, to respond to and provide witnesses for depositions paid for with public funds, and seek a protective order to prevent J.C.'s deposition from being distributed to anyone other than the State and the defense. While Bye's plea was not literally entered on the eve of trial, significant resources were dedicated to the prosecution of his case for more than a year before he entered his guilty plea. Moreover, the State's evidence against Bye was significant. Two officers discovered Bye at the park in a compromising position with J.C. J.C. and Mother both stated that Bye knew J.C. was fifteen years old, and Bye, himself, admitted that he knew J.C. was fifteen. J.C. reported to officers that Bye had penetrated her vagina with his finger, and when confronted, Bye admitted having committed that act. Simply put, Bye held out, and when he faced a looming trial with substantial evidence against him, he made a pragmatic decision to plead guilty. Bye has not persuaded us that the trial court abused its discretion by failing to identify his guilty plea as a mitigating factor.

## II. Inappropriate Sentence

[16] Bye next argues that his sentence is inappropriate. Under Indiana Appellate Rule 7(B), we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [this C]ourt finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *See Corbally v. State*, 5 N.E.3d 463, 471 (Ind. Ct. App. 2014). The question under Appellate Rule 7(B) is not whether another sentence is *more*

appropriate; rather, the question is whether the sentence imposed is inappropriate. *King v. State,* 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). It is the defendant's burden on appeal to persuade the reviewing court that the sentence imposed by the trial court is inappropriate. *Chappell v. State,* 966 N.E.2d 124, 133 (Ind. Ct. App. 2012), *trans. denied.*

[17] Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell v. State,* 895 N.E.2d 1219, 1222 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id.* at 1225. Whether we regard a sentence as inappropriate turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id.* at 1224.

[18] In reviewing the appropriateness of a sentence, our Supreme Court has "decline[d] to narrowly interpret the word 'sentence' in Appellate Rule 7 to constrict appellate courts to consider only the appropriateness of the aggregate length of the sentence without considering also whether a portion of the sentence is ordered suspended or otherwise crafted using any of the variety of sentencing tools available to the trial judge." *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010); *see Marley v. State*, 17 N.E.3d 335, 339 (Ind. Ct. App. 2014) (quoting *Davidson*, 926 N.E.2d at 1025 (under Appellate Rule 7(B) we do not consider only appropriateness of aggregate length of sentence, but also whether part of sentence is suspended), *trans. denied*. Here, the trial court

suspended a portion of Bye's sentence and placed him on probation for five years. Accordingly, while Bye questions whether his fifteen-year sentence is inappropriate, the issue before us is more correctly stated as whether his fifteen year sentence with ten years executed and five years suspended to probation is inappropriate.

[19] The advisory sentence for the class of crimes to which the offense belongs is the starting point for the court's consideration of what sentence is appropriate for the crime committed. *Weiss v. State*, 848 N.E.2d 1070, 1072 (Ind. 2006). At the time the offense was committed, our General Assembly had classified sexual misconduct with a minor, involving a child over the age of fourteen and under the age of sixteen and an accused over the age of twenty-one, as a Class B felony. Ind. Code § 35-42-4-9(a)(1). The advisory sentence for a Class B felony is ten years, with a maximum sentence of twenty years and a minimum sentence of six years. Ind. Code § 35-50-2-5. Bye's executed sentence of ten years was the advisory sentence for a Class B felony.

[20] Addressing the nature of the offense, Bye contends that he admitted that he fondled and "performed sexual deviate conduct on J.C., who was fifteen at the time." *Appellant's Br.* at 21. Even so, he maintains that this was not "a lengthy course of molestation." *Id*. He further maintains that he was not in a position of trust or authority over J.C. While the length of the molestation and the position of trust or authority may be used by a trial court as aggravators, we are not persuaded that the lack of those same factors can be used to mitigate Bye's crime. *See* Ind. Code § 35-38-1-7.1 (setting forth mitigating and aggravating

circumstances that may be considered during sentencing). As the State points out, Bye, who had a daughter the same age as J.C., found J.C. via Facebook, ingratiated himself with Mother, and at the age of forty digitally penetrated fifteen-year-old J.C.'s vagina. Bye has not convinced this court that a ten-year executed sentence is inappropriate in light of the nature of the offense.

[21] Addressing his character, Bye contends that his sentence was inappropriate because his criminal history was not significant. Citing to his sole Class D felony conviction for neglect of a dependent, Bye admits that the conviction does "not reflect well on [him]," but argues that it was not a grave offense nor was it connected to sexual misconduct with a minor or any other sex crimes." *Appellant's Br*. at 21. The State counters that, although Bye's first crime was not committed until he was thirty-nine years old, it is significant that he committed the second felony, of increasing severity, about nine months after he was convicted for felony neglect. The State also recognizes that Bye was on probation at the time he committed the instant offense, which is listed as a circumstance that allows a trial court to impose an aggravated sentence. I.C. § 35-38-1-7.1(a)(6). We are not persuaded that Bye's sentence was inappropriate in light of the character of the offender.

[22] Here, the trial court did not abuse its discretion when it sentenced Bye. Moreover, Bye's sentence is not inappropriate in light of the nature of the offense and the character of the offender. Affirmed.

Najam, J., and Barnes, J., concur.