

**FILED**

Jul 15 2016, 9:46 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

David M. Payne
Marion, Indiana

Joe Keith Lewis
Marion, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Larenz Jordan, | July 15, 2016 |
| *Appellant-Defendant,* | Court of Appeals Case No. 27A02-1511-CR-1897 |
| v. | Appeal from the Grant Circuit Court |
| State of Indiana, | The Honorable Mark E. Spitzer, Judge |
| *Appellee-Plaintiff* | Trial Court Cause No. 27C01-1501-F1-2 |

**Bailey, Judge.**

# Case Summary

Larenz Jordan ("Jordan"), at age fifteen, was waived into the Grant Circuit Court and convicted after a jury trial of twelve counts of Rape[1] and one count of Conspiracy to Commit Rape,[2] as Level 1 felonies; one count of Burglary, as a Level 4 felony;[3] and one count of Robbery, as a Level 5 felony.[4] He now appeals.

We affirm.

# Issues

Jordan raises two issues for our review, which we restate as:

I. Whether the juvenile court abused its discretion when it granted the State's motion to waive jurisdiction over Jordan's case; and

II. Whether Jordan's sentence was inappropriate and requires revision under Appellate Rule 7(B).

---

[1] Ind. Code §§ 35-42-4-1(a)(1) & (b).

[2] I.C. §§ 35-42-4-1(a)(1) & (b), I.C. § 35-41-5-2.

[3] I.C. §§ 35-43-2-1 & 35-43-2-1(1).

[4] I.C. § 35-42-5-1(1).

# Facts and Procedural History

[4]     On the night of July 15, 2014, in Marion, Jordan, then fifteen years old, along with two friends, Jamar Greer ("Greer"), also fifteen years old, and Nytarian Callahan ("Callahan"), then eighteen years old, broke into and entered the home of R.H. and her family while R.H.'s husband was out of town. The couple's four children were asleep at the time. Greer had suggested that the three burglarize the home with the intent to steal valuables from the residence. Jordan, Greer, and Callahan observed the home for some time. Jordan saw movement from inside the home during this period.

[5]     Greer entered the home through a window and then opened a door to allow Jordan and Callahan inside. Soon after the three entered the home, R.H. approached them and asked what they wanted. The three demanded money, and R.H. said she did not have any. R.H. begged the three not to harm or wake up her children, and Greer forced R.H. into a guest bedroom while Jordan and Callahan went upstairs to ensure the children were asleep.

[6]     While Jordan and Callahan were upstairs, Greer forced R.H. to perform oral sex upon him. When Jordan and Callahan returned, Greer told them they could participate, as well. For the next several hours, the three repeatedly forced R.H. to engage in vaginal and oral sex, and threatened her safety and that of her children in order to force R.H. to comply and to persuade her not to report the events. R.H. was compliant with the trio's demands to prevent her children from being awakened or harmed.

[7] At one point during the events of that night, Jordan and Callahan took R.H.'s van, which they drove to a nearby store to buy soda and a bag of chips as a snack. Greer continued to engage in sex acts with R.H. while Jordan was gone. After Jordan and Callahan returned, only Greer continued to engage in sex acts. After this, the three forced R.H. to bathe in an effort to remove from her body evidence of their offenses. Eventually the three left, taking with them laptop computers and other electronics. As a result of Jordan's, Callahan's, and Greer's acts, R.H. suffered numerous injuries, including vaginal lacerations and bruising and abrasions to other parts of her body. When they left, one member of the trio told R.H. to have a "blessed day." (Trial Tr. at 172.)

[8] Jordan was alleged to be a delinquent juvenile on August 27, 2014. The same day, the State moved the juvenile court to waive jurisdiction over Jordan. A hearing on the State's motion was conducted on October 10, 2014, which included testimony as to Jordan's psychological and behavior status and argument from the parties. On January 9, 2015, after briefing from the parties, the juvenile court waived Jordan into the trial court to be tried as an adult in the Grant Circuit Court. On January 15, 2015, the State charged Jordan with twelve counts of Rape[5] and one count each of Conspiracy to Commit Rape, Burglary, and Robbery.

---

[5] Some of these counts were based on principles of accomplice liability.

[9] A jury trial was conducted from July 20, 2015 to July 23, 2015. At the conclusion of the trial, the jury found Jordan guilty of all fifteen charged offenses. After several hearings and a continuance, a sentencing hearing was conducted on October 9, 2015. The trial court entered judgments of conviction against Jordan, heard testimony from R.H. and her husband, and sentenced Jordan to forty years imprisonment for each of the twelve counts of Rape, forty years imprisonment for the single count of Conspiracy to Commit Rape, ten years imprisonment for Burglary, and six years imprisonment for Robbery. The trial court ran these sentences concurrent with one another, yielding an aggregate term of imprisonment of forty years, with four years suspended to probation. This appeal ensued.

# Discussion and Decision

## Waiver of Jurisdiction

[10] Jordan's first contention on appeal is that his conviction should be vacated because the juvenile court abused its discretion when it waived jurisdiction over his case to the trial court. Because the juvenile court abused its discretion, Jordan argues, the trial court lacked subject matter jurisdiction over Jordan's case.

[11] Juvenile courts have exclusive original jurisdiction over children who are alleged to be delinquent under Indiana Code article 31-37. I.C. § 31-30-1-1(1). "Upon motion of the prosecuting attorney and after full investigation and [a] hearing," a juvenile court may waive jurisdiction over a child alleged to be a

delinquent. I.C. § 31-30-3-2. A juvenile court is within its discretion to waive jurisdiction in this manner when it finds that:

(1) the child is charged with an act that is a felony:

(A) that is heinous or aggravated, with greater weight given to acts against the person than to acts against property; or

(B) that is a part of a repetitive pattern of delinquent acts, even though less serious;

(2) the child was at least fourteen (14) years of age when the act charged was allegedly committed;

(3) there is probable cause to believe that the child committed the act;

(4) the child is beyond rehabilitation under the juvenile justice system; and

(5) it is in the best interests of the safety and welfare of the community that the child stand trial as an adult.

*Id.*

[12] Juvenile proceedings, unlike criminal proceedings, are civil in nature and the burden is on the State to establish by a preponderance of the evidence that juvenile jurisdiction should be waived. *Phelps v. State*, 969 N.E.2d 1009, 1016 (Ind. Ct. App. 2012), *trans. denied*. We review a juvenile court's decision to waive its jurisdiction for an abuse of discretion. *Id.* The juvenile court is

entitled to give the evidence whatever weight it deems appropriate. *Id.* To the extent an appellant challenges the sufficiency of the evidence supporting a juvenile court's decision to waive jurisdiction, our review is conducted similarly to other sufficiency cases. *Id.* We do not reweigh evidence or assess witness credibility, and we look only to the evidence favorable to the State and the reasonable inferences to be drawn therefrom considering both the record from the waiver hearing and the court's findings of fact. *Id.* A juvenile court's waiver order must include specific findings of fact to support the order. I.C. § 31-30-3-10.

[13] Here, the juvenile court found that all of the elements of Section 31-30-3-2 were met, entered a detailed set of findings, and waived jurisdiction over Jordan's case to the Grant Circuit Court. Jordan's challenge to the juvenile court's order centers only on whether the trial court was within its discretion to conclude that Jordan was "beyond rehabilitation under the juvenile justice system." I.C. § 31-30-3-2(4). The determination of whether a juvenile is beyond rehabilitation of the juvenile justice system is fact sensitive and can vary widely from individual to individual and circumstance to circumstance. *Hall v. State*, 870 N.E.2d 449, 457 (Ind. Ct. App. 2007), *trans. denied*.

[14] Jordan's specific allegation of error centers on the court's use of the phrase "criminal thinking" in its findings concerning the "beyond rehabilitation" element of the waiver statute. Jordan contends that for the court to have entered findings concerning "criminal thinking," as used in the waiver order, the record required evidence related to "criminogenic traits" as those are

understood to apply within the context of evidence-based practices in sentencing and rehabilitation. (Appellant's Br. at 12.) Jordan notes that "no data was presented regarding criminogenic traits, testing of said traits, or criminal thinking as an area of relevant inquiry." (Appellant's Br. at 11.) Absent such evidence, Jordan insists, "the juvenile court had no basis to conclude that Jordan's criminal thinking presented a bar to his successful rehabilitation within the juvenile justice system." (Appellant's Br. at 11.) Thus, Jordan argues that the court's waiver order was defective as a matter of law.

[15] To the extent Jordan would require the application, at the time of a waiver hearing, of evidence-based practices each time the phrase "criminal thinking" is invoked, he provides us with no legal authority to support that proposition. Nor do we see any reason to impose such a requirement as a matter of law. Jordan's construction of the court's order is excessively narrow and seeks to impose requirements not stated in the juvenile waiver statute. The juvenile court's finding with respect to the "beyond rehabilitation" element states, "The juvenile's lack of any prospect of rehabilitation in the juvenile justice system is demonstrated by his criminal thinking. *The following factors are indicative of the insufficiency of rehabilitative programs in the criminal justice system…*" (App'x at 52, emphasis added.) That is, even with invocation of the phrase "criminal thinking," the court's order addresses the statutory "beyond rehabilitation" element. And the court's order goes on to recite numerous evidentiary matters that are in the waiver hearing record, including Jordan's minimization of his part in the crime, his apparent lack of remorse, "his beliefs of [the victim's]

willingness to 'go along'" being inconsistent with his actions, the decision to move from a burglary of his victim's home with a planned theft to rape upon discovering little of value to steal, the alleged escalation of the rape, indifference to the presence of the victim's children in the home, and threats made on the children in order to compel the victim's compliance. (App'x at 52-54.) Jordan does not challenge as insufficient the evidence underlying these findings.

[16]  There is no error associated with the juvenile court's use of the phrase "criminal thinking" without reference to evidence-based measures of criminogenic behavior where, as here, the elements of the waiver statute are otherwise properly addressed and supported by evidence from the record of the waiver hearing. The juvenile court did not abuse its discretion where there was no evidence related to criminal thinking as that term is used in evidence-based practices assessing criminogenic behavior.

## Inappropriateness of Sentence

[17]  We turn to Jordan's other contention on appeal, that his sentence is inappropriate under Appellate Rule 7(B).

[18]  The authority granted to this Court by Article 7, § 6 of the Indiana Constitution permitting appellate review and revision of criminal sentences is implemented through Appellate Rule 7(B), which provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, and as

interpreted by case law, appellate courts may revise sentences after due consideration of the trial court's decision, if the sentence is found to be inappropriate in light of the nature of the offense and the character of the offender. *Cardwell v. State*, 895 N.E.2d 1219, 1222-25 (Ind. 2008); *Serino v. State*, 798 N.E.2d 852, 856-57 (Ind. 2003). The principal role of such review is to attempt to leaven the outliers. *Cardwell*, 895 N.E.2d at 1225.

[19] In reviewing an inappropriateness challenge, the central inquiry is not whether one sentence is *more* appropriate than another, but rather whether the sentence in the challenged case is *inappropriate*. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Comparison of sentences for similar offenses can, then, be a proper consideration in addressing an inappropriateness claim. *Hunt v. State*, 43 N.E.3d 588, 590 (Ind. Ct. App. 2015), *trans. denied*. Comparison of sentences is not, however, a requirement. *Id.*

[20] Jordan was convicted of twelve counts of Rape and one count of Conspiracy to Commit Rape, all as Level 1 felonies; Burglary, as a Level 4 felony; and Robbery, as a Level 5 felony. For each Level 1 felony, Jordan faced a sentencing range of between twenty and forty years imprisonment, with an advisory term of thirty years. I.C. § 35-50-2-4(b). For the single Level 4 felony conviction, Jordan faced a sentencing range of between two and twelve years, with an advisory term of six years. I.C. § 35-50-2-5.5. For the Level 5 felony conviction, Jordan faced a sentencing range of between one and six years, with an advisory term of three years. I.C. § 35-50-2-6(b). The trial court imposed the maximum terms of imprisonment for each offense, and ran the sentences

concurrent with one another, yielding an aggregate term of imprisonment of forty years, with four years suspended to probation.

[21] The nature of the Jordan's offenses is, put simply, horrendous. As the State observed in its brief, "'[h]einous' is too weak an adjective to accurately describe the nature of these offenses." (Appellee's Br. at 31.) Jordan, along with two others, broke into the victim's home in the middle of the night, knowing that the house was occupied. Jordan and his co-defendants, encountering a frightened woman, proceeded to repeatedly rape R.H. while her children were in the home, threatening injury to R.H. and to her children in order to obtain her compliance. Jordan and his co-defendants looked for valuables to steal, and took several items, including computers and other electronics. At some point, Jordan, along with Callahan, stole the family's van to buy snacks and returned to the home. R.H. suffered considerable psychological harm, as well as numerous physical injuries to her neck, shoulder, hips, abdomen, buttocks, and vagina from the assault. The assault was prolonged and brutal, and does nothing to suggest Jordan's sentence was inappropriate in light of his offenses.

[22] Jordan's character also does not militate in his favor. Jordan correctly notes that he was less than sixteen years of age at the time of the offenses and that he has no prior criminal history, though he was suspended from school for "incorrigibility." (App'x at 717.) Jordan also indicated that he was involved in school sports and had above-average grades. However, even after having been convicted of twelve counts of rape and a count of conspiracy to commit rape, Jordan insisted to a probation officer not simply that he was innocent, but that

his victim "did not protest" and that she "did not seem to be upset with the sex" except for her concern that she would have "to explain to her husband about the condom wrappers." (App'x at 718.) Jordan stated that he experienced "joy and thrill" when he took the victim's car to leave the crime scene to buy snacks. (App'x at 718.) Jordan testified at trial that while burglarizing the home was disrespectful of R.H., he was otherwise respectful of her, despite having no prior knowledge of or relationship with R.H. and acknowledging that under similar circumstances, he would consider it disrespectful for someone to commit the same acts upon women important in his own life. (Tr. at 603.) When the State, on cross-examination, asked Jordan whether it was courageous of him to break into a dark house at night and confront the homeowner without backing down, Jordan responded that he thought he was courageous in doing so. (Tr. at 618-19.) He also stated that he believed he was respectful of women generally. A probation officer who observed Jordan's trial testimony opined that "the Defendant has no 'moral compass and I don't know how to fix that.'" (App'x at 720.)

[23] Simply put, even given his age, Jordan's character speaks poorly of him and of the likelihood of rehabilitation. Recognizing this, Jordan argues that we should determine his sentence inappropriate based largely upon the objective measurements in the pre-sentencing investigation report. And, though he does not challenge his sentence as unconstitutional, Jordan suggests that in light of Supreme Court case law and psychological research his age should significantly militate in favor of reducing his aggregate sentence to twenty years. He also

compares his sentence to those of defendants in other cases that he contends are similar in criminal history and charged offenses.

[24] We decline Jordan's invitation to conclude that comparison to others and the objective measures in the pre-sentencing investigation report render his sentence inappropriate. The heinous nature of the offenses and his character militate against it. We cannot conclude his sentence was inappropriate.

# Conclusion

[25] The juvenile court did not abuse its discretion when it waived Jordan into the Grant Circuit Court. Jordan's sentence is not inappropriate.

[26] Affirmed.

Bradford, J., and Altice, J., concur.