## FOR PUBLICATION



FILED
May 07 2013, 9:29 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**GILDA W. CAVINESS**
Caviness Law Office, LLC
Rushville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

RYAN WESTLAKE,                             )
                                           )
    Appellant-Defendant,             )
                                           )
       vs.                        )     No.  73A01-1209-CR-433
                                           )
STATE OF INDIANA,                          )
                                           )
    Appellee-Plaintiff.              )

APPEAL FROM THE SHELBY SUPERIOR COURT
The Honorable Jack A. Tandy, Judge
Cause Nos. 73D01-1201-FA-1 and 73D01-1201-FB-4

**May 7, 2013**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Ryan Westlake was charged under two cause numbers with various offenses stemming from his sexual relationships with two teenage girls. Westlake entered a plea agreement whereby he pled guilty to class A felony child molesting and class B felony sexual misconduct with a minor in exchange for the dismissal of four other charges. Sentencing was left to the trial court's discretion. The trial court identified one aggravating factor, Westlake's criminal and juvenile record, and one mitigating factor, his mental health issues. Finding the factors to be of equal weight, the trial court imposed concurrent advisory sentences.

Westlake appeals his sentence, arguing that the trial court abused its discretion by failing to identify his guilty plea as a mitigating factor and that his sentence is inappropriate. The State argues that Westlake waived his right to appeal his sentence by signing a document titled "Advisement of Rights and Waiver" that was submitted to the court along with his plea agreement. We conclude that the waiver clearly forecloses Westlake's right to challenge his sentence pursuant to Indiana Appellate Rule 7(B), but does not prohibit him from raising the issue of whether the trial court abused its discretion. However, because Westlake had already confessed to having sexual intercourse with the victims and received a substantial benefit in the form of dismissed charges, he has not persuaded us that the trial court abused its discretion by failing to identify his guilty plea as a mitigating factor. Therefore, we affirm.

**Facts and Procedural History**

In January 2012, R.E. reported that her fourteen-year-old daughter, C.E., had run away and might be with Westlake at an abandoned residence on West Washington Street in Shelbyville. Officer Dan McCarty went to the residence and found C.E. and Westlake there.

According to the probable cause affidavit filed in cause number 73D01-1201-FB-4 ("FB-4"), police determined that the residence belonged to Christopher Lux, who had not given C.E. or Westlake permission to be there. Officer McCarty ordered Westlake to come out of the house several times before he complied. In a subsequent interview, Westlake, who was twenty-two years old at the time, admitted that he knew that C.E. was fourteen and admitted to having sexual intercourse with C.E. on three occasions during January 2012. As a result, Westlake was charged under this cause number with class B felony sexual misconduct with a minor, class C felony sexual misconduct with a minor, class D felony residential entry, and class A misdemeanor resisting law enforcement.

According to the probable cause affidavit filed in cause number 73D01-1201-FA-1 ("FA-1"), on January 13, 2012, the Department of Child Services informed the Shelbyville Police Department that it had received a report that Westlake had been involved in a sexual relationship with a thirteen-year-old girl, B.B. After his arrest on the charges in FB-4, Westlake was also questioned about this report. Westlake admitted that he had had sexual intercourse with B.B. on three occasions and that she had told him prior to the second and third occasions that she was thirteen. As a result, Westlake was charged with child molesting as a class A and as a class C felony.

On May 25, 2012, Westlake and the State filed a joint motion to enter guilty plea concerning the charges in FA-1 and FB-4. Westlake agreed to plead guilty to class A felony child molesting in FA-1 and class B felony sexual misconduct with a minor in FB-4, and the State agreed to dismiss the remaining charges. Sentencing was left to the court's discretion. The parties also filed a document titled "Advisement of Rights and Waiver," which includes the following language:

> If you are pleading guilty to an offense with sentencing to be determined by the Court, you waive your right to have any Court review the reasonableness of the sentence, including but not limited to appeals under Indiana Rule of Appellate Procedure 7(b) [sic], and you agree and stipulate that the sentence of the Court is reasonable and appropriate in light of your nature and character, and the nature and character of the offense. *Creech v. State*, 887 N.E.2d 73 (Ind. 2008).

Appellant's App. at 43. At the guilty plea hearing, the trial court gave Westlake the following advisement concerning his right to appeal:

> THE COURT: Do you understand if you went to trial and you were convicted that you would have the right to appeal your conviction?
>
> MR. WESTLAKE: Yes, sir.
>
> THE COURT: Do you understand that by pleading guilty you're giving up most of your rights associated with your right of appeal?
>
> MR. WESTLAKE: Yes, sir.

Tr. at 6-7.

After advising Westlake of his rights, the court questioned Westlake about the factual basis for his plea. The court asked Westlake how he knew B.B., and Westlake said, "I mentored her there for a little bit and I took her to church" because her father had "asked me

4

to find an activity for her to keep out of trouble." *Id*. at 14. Westlake stated that B.B. "was giving me looks and stuff and like, pretty much made a move and I let it happen." *Id*.

Westlake said that he met C.E. through B.B. Westlake stated that the night that he ran away with C.E., he had been smoking marijuana and got into an argument with his sister. His sister said that she was going to call the police, and Westlake left because he did not want to get caught with drugs in his system. He went to a friend's house and smoked some more marijuana. Then he went to C.E.'s house and told her that he needed help getting out of town because the police were after him, and she took him to an abandoned house. Westlake claimed that after a while, C.E. started "looking" at him, and he "made a move." *Id*. at 16.

The trial court took the plea agreement under advisement and scheduled a sentencing hearing. At the sentencing hearing on July 27, 2012, the trial court accepted the plea and heard testimony from Westlake's mother, Angela Spears. Spears stated that Westlake had been in special education classes in school and was typically four to five grades behind other students his age. She said that on an emotional level, Westlake is "younger than an adult," and his "brain capacity" is comparable to children twelve to fourteen years old. *Id*. at 23. Because of this, Westlake tended to associate with children that age. Spears testified that Westlake is capable of following rules "to an extent" and does better if his day is structured. *Id*. at 24. She felt that Westlake has trouble with drugs and alcohol and is susceptible to peer pressure. Westlake made a statement to the court in which he apologized for his actions and acknowledged that what he had done was wrong.

The presentence investigation report ("PSI") indicates that Westlake committed his first delinquent act – class D felony theft if committed by an adult – in 2000 at the age of ten. He was placed on probation and ordered to participate in mental health treatment. In 2002, he committed what would be class A misdemeanor battery if committed by an adult. He was again placed on probation. He underwent a mental health evaluation and was diagnosed with bipolar disorder, post-traumatic stress disorder, and disruptive behavior disorder. In 2003, he committed what would be class C felony child molesting if committed by an adult. The victim was a four-year-old girl whom his mother was babysitting. He was again placed on probation and ordered to participate in counseling. Westlake violated probation twice by running away and possessing pornography. In 2005, he was arrested and charged with being a runaway and what would be class A misdemeanor conversion, class D felony intimidation, and class A misdemeanor battery resulting in bodily injury if committed by an adult. The PSI does not reflect which of these resulted in true findings, but Westlake was placed in the Indiana Boys School. Westlake was placed on parole at some point, but he violated parole and was returned to the Indiana Boys School. Westlake was released in 2009 at the age of nineteen. In 2011, Westlake was convicted of class C misdemeanor operating a vehicle having never received a license, his only adult offense other than the instant offenses.

The PSI reflects that Westlake has received mental health treatment from at least five different facilities. Although he denied having been abused as a child, other information in the PSI suggests that he was. Westlake's IQ is 82, and he never received a diploma or GED. Westlake admitted that he had been smoking marijuana heavily over the previous two years.

6

When the interviewer asked Westlake about the instant offenses, he admitted that he was "in the wrong," but also blamed the girls' parents for not supervising them more carefully. Appellant's App. at 80.

The trial court found Westlake's criminal and juvenile record to be aggravating, placing particular emphasis on the adjudication for child molesting. As a mitigating factor, the court found that Westlake has significant mental health issues that impact his ability to conform his behavior to the law. The court found that the aggravating and mitigating factors were of equal weight and imposed concurrent advisory sentences – thirty years on the class A felony and ten years on the class B felony.[1] The court suspended five years of the thirty-year sentence, giving Westlake an aggregate sentence of twenty-five years executed and five suspended. Westlake now appeals his sentence.

## Discussion and Decision

Westlake argues that the trial court abused its discretion by failing to identify his guilty plea as a mitigating factor and that his sentence is inappropriate. The State argues that Westlake has waived his right to appeal these issues. Because the State's argument is potentially dispositive, we will address it first.

### I. Waiver

Along with his plea agreement, Westlake signed a document titled "Advisement of Rights and Waiver." That document contains the following provision:

If you are pleading guilty to an offense with sentencing to be determined by

---

[1] *See* Ind. Code § 35-50-2-4 (advisory sentence for a class A felony is thirty years); Ind. Code § 35-50-2-5 (advisory sentence for class B felony is ten years).

the Court, you waive your right to have any Court review the reasonableness of the sentence, including but not limited to appeals under Indiana Rule of Appellate Procedure 7(b) [sic], and you agree and stipulate that the sentence of the Court is reasonable and appropriate in light of your nature and character, and the nature and character of the offense. *Creech v. State*, 887 N.E.2d 73 (Ind. 2008).

Appellant's App. at 43.

In *Creech*, our supreme court held that a defendant may, as part of a plea agreement, waive the right to appellate review of his sentence, as long as the waiver is knowing and voluntary. 887 N.E.2d at 75. In determining whether a defendant has made a knowing and voluntary waiver, our courts have typically considered the advisement given by the trial court at the guilty plea hearing. *See*, *e.g.*, *Ricci v. State*, 894 N.E.2d 1089, 1093-94 (Ind. Ct. App. 2008) (finding no waiver where, despite language in the plea agreement that defendant waived his right to appeal the sentence, court advised defendant at the plea hearing that he had not surrendered his right to appeal the sentence), *trans. denied*. At the guilty plea hearing, the trial court advised Westlake as follows:

THE COURT: Do you understand if you went to trial and you were convicted that you would have the right to appeal your conviction?

MR. WESTLAKE: Yes, sir.

THE COURT: Do you understand that by pleading guilty you're giving up most of your rights associated with your right of appeal?

MR. WESTLAKE: Yes, sir.

Tr. at 6-7.

The written waiver clearly states that Westlake waived his right to challenge his sentence pursuant to Indiana Appellate Rule 7(B). Although the trial court's advisement was

8

not very specific, nothing in the advisement contradicts the language of the waiver. Therefore, we conclude that Westlake has waived his right to challenge his sentence pursuant to Appellate Rule 7(B).

An abuse of discretion claim, however, is distinct from review pursuant to Appellate Rule 7(B). *See King v. State*, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008) (inappropriate sentence and abuse of discretion claims are to be analyzed separately). The waiver provision states that he cannot challenge the "reasonableness" of the sentence, a term which appears to be used as a synonym for "appropriateness," the linchpin of our analysis pursuant to Appellate Rule 7(B). The waiver provision does not specifically address abuse of discretion claims or include any "catchall" language completely foreclosing the possibility of appeal. The trial court's advisement also suggested that some relief might still be available on appeal. As to abuse of discretion claims, the waiver provision is ambiguous at best and should be construed against the State as the drafter. *See Valenzuela v. State*, 898 N.E.2d 480, 483-84 (Ind. Ct. App. 2008) (ambiguous plea agreement should be strictly construed against the State), *trans. denied* (2009). We conclude that Westlake has not waived his abuse of discretion claim.

## *II. Abuse of Discretion*

Sentencing decisions are within the sound discretion of the trial court and are reviewed only for an abuse of that discretion. *Anglemyer v. State,* 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g,* 875 N.E.2d 218. An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the

reasonable, probable, and actual deductions to be drawn therefrom. *Id.* A trial court may abuse its discretion in sentencing by failing to enter a sentencing statement, entering a sentencing statement that explains reasons for imposing a sentence which the record does not support, omitting reasons that are clearly supported by the record and advanced for consideration, or giving reasons that are improper as a matter of law. *Id.* at 490-91.

Westlake argues that the trial court abused its discretion by failing to identify his guilty plea as a mitigating factor. "An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record." *Id.* at 493. A guilty plea does not automatically amount to a significant mitigating factor. *Wells v. State*, 836 N.E.2d 475, 479 (Ind. Ct. App. 2005), *trans. denied* (2006). "For instance, a guilty plea does not rise to the level of significant mitigation where the defendant has received a substantial benefit from the plea or where the evidence against him is such that the decision to plead guilty is merely a pragmatic one." *Id.*

Westlake notes that he pled guilty a few months after being arrested, he pled guilty to the most serious charge under each cause number, and his plea agreement contained no cap on the sentence that could be imposed. However, he obtained a substantial benefit in that four additional charges were dismissed, three of which were felonies. In addition, Westlake admitted to having sexual intercourse with each victim multiple times after being discovered in an abandoned home with one of the victims. Given the strength of the evidence against him and the benefit that Westlake received from the plea agreement, Westlake has not

persuaded us that the trial court abused its discretion by failing to identify his guilty plea as a mitigating factor. We therefore affirm his sentence.

Affirmed.

ROBB, C.J., and FRIEDLANDER, J., concur.