## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 26 2016, 8:54 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Lawrence M. Hansen
Hansen Law Firm, LLC
Noblesville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Derrick Hampsch,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | February 26, 2016<br><br>Court of Appeals Case No.<br>48A05-1507-CR-979<br><br>Appeal from the Madison Circuit Court.<br>The Honorable Thomas Newman, Jr., Judge.<br>Cause No. 48C03-1410-FB-1943 |

**Friedlander, Senior Judge**

[1] Derrick Hampsch appeals the twenty-year sentence the trial court imposed for Hampsch's conviction of sexual misconduct with a minor, a Class B felony.[1] We affirm.

[2] Hampsch worked for a church in Knox County. He was a youth minister, and G.D., a thirteen-year-old, was a member of his youth group. G.D.'s parents informed Hampsch that G.D. had a crush on him, expecting that he would address the matter appropriately. Hampsch began paying "special attention" to G.D. Tr. p. 37. When he came to school to have lunch with members of his youth group, he sat next to G.D. and put his knee against her leg. On other occasions, he hugged her and squeezed her shoulders in a way "that might not have seemed out of place to other people but they were personal to [G.D.]." *Id.* at 39. In addition, Hampsch communicated daily with G.D. via Facebook's private messaging application. He had a joint Facebook account with his wife, but he created a secret account to communicate with G.D.

[3] Hampsch also gave G.D. special treatment. He encouraged her to sing with the church band and praised her for leading a youth group program in which the group's members called elderly people to talk with them.

---

[1] Ind. Code section 35-42-4-9 (West, Westlaw 2007). The version of the governing statute, i.e., Ind. Code § 35-42-4-9, in effect at the time this offense was committed classified it as a Class B felony. This statute has since been revised and in its current form reclassifies the offense as a Level 4 felony. *See* Ind. Code § 35-42-4-9 (West, Westlaw current with all 2015 First Regular Session of the 119th General Assembly legislation effective through June 28, 2015). The new classification, however, applies only to offenses committed on or after July 1, 2014. *See id.* Because this offense was committed prior to that date, it retains the former classification.

[4]   Hampsch's conduct made G.D. feel "loved and desirable" and "more special than all of the other kids in the youth group." *Id.* at 42. As a result, G.D. felt as though she fell in love with Hampsch.

[5]   In April 2010, Hampsch and his youth group traveled to a church in Madison County, Indiana to attend a conference. G.D., who had turned fourteen, was part of the group. After everyone else had gone to sleep, Hampsch and G.D. met in a large closet. Hampsch inserted his finger into G.D.'s vagina and made her fondle his penis.

[6]   Hampsch continued to have sexual contact with G.D. after they returned to Knox County. On one occasion, Hampsch and G.D. were at a church camp. He arranged for them to meet in the offices of another church, where they fondled each other. On yet another occasion, Hampsch interrupted G.D. while she was making calls to the elderly from church, led her into a pantry, and removed her shirt and bra.[2]

[7]   Hampsch's sexual activities with G.D. caused her to feel shame and anxiety. She felt like she "let it happen" and that it was her fault. *Id.* at 42. She experienced nightmares and had trouble eating. Later, she realized Hampsch had used his position of authority to manipulate her when she was "at an

---

[2] Hampsch has a pending appeal arising from an act of sexual misconduct with G.D. in Knox County. *Hampsch v. State*, 42A01-1510-CR-1682.

incredible [sic] fragile time in [her] life" and she was looking for her "place in the world." *Id.* at 45.

[8] At the time of Hampsch's sentencing hearing, five years after his criminal act, G.D. still felt "violated and uncomfortable" when an older man touched her. *Id.* at 46. For several years, she had difficulty allowing her father to hug her. In addition, G.D. took steps to ensure that she was never alone with an older man. She stated that she no longer had confidence in church employees because she found herself wondering "if they are truly who they say they are." *Id.* She sought counseling to deal with ongoing feelings of shame and believed the emotional trauma Hampsch caused would always be with her.

[9] The current case began when G.D. learned from others that Hampsch was under investigation "for having inappropriate relationships with girls from youth [group]" and spoke with the police. *Id.* at 45. G.D. was aware Hampsch had communicated with another teenage girl and had told the girl to delete his messages to her.

[10] The State charged Hampsch with one count of B felony sexual misconduct with a minor for his acts involving G.D. at the church conference in Madison County. Hampsch and the State executed a plea agreement. Hampsch agreed to plead guilty as charged, and the sentence would be left to the trial court's discretion. The court accepted the plea agreement and scheduled a sentencing hearing.

At sentencing, the trial court identified the following mitigating factors: (1) Hampsch's lack of a criminal record; (2) Hampsch's remorse; (3) Hampsch's guilty plea; (4) hardship to Hampsch's three children; and (5) Hampsch's intent to serve others in the future by opening an orphanage in Honduras. The court identified the following aggravating factors: (1) Hampsch's explanation that he seduced G.D. because he was upset that his wife was having an affair; (2) Hampsch's "repeated conduct with the victim," *Id.* at 61; and (3) Hampsch's abuse of his position of trust as a youth minister, which damaged G.D. "probably for the rest of their [sic] life." *Id.* Concluding that "the aggravating circumstances greatly out weight [sic] the mitigating circumstances," the court sentenced Hampsch to twenty years. *Id.* This appeal followed.

Hampsch raises two categories of sentencing challenges. He claims: (1) the trial court abused its discretion in the course of identifying aggravating and mitigating circumstances; and (2) his sentence is inappropriate in light of the nature of the offense and the character of the offender.

# 1.

Hampsch argues that the trial court overlooked numerous mitigating factors during sentencing. Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Barnhart v. State*, 15 N.E.3d 138 (Ind. Ct. App. 2014). An abuse of discretion occurs if the decision is clearly against the logic and effect of the fact and circumstances before the court, or the reasonable, probable and actual deductions to be drawn

therefrom. *Westlake v. State*, 987 N.E.2d 170 (Ind. Ct. App. 2013). A trial court may abuse its discretion by failing to enter a sentencing statement, entering a sentencing statement that explains reasons for imposing a sentence which the record does not support, omitting reasons that are clearly supported by the record and advanced for consideration, or giving reasons that are improper as a matter of law. *Id.*

[14] An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Id.* A trial court is not obligated to accept the defendant's argument as to what constitutes a mitigating factor. *Rogers v. State*, 958 N.E.2d 4 (2011).

[15] Hampsch claims the trial court overlooked his lack of a criminal record, the hardship to his dependents that will result from his incarceration, and his guilty plea. We disagree. The trial court identified those factors as mitigating circumstances. To the extent Hampsch asserts that the trial court should have given greater weight to those factors, we note that trial courts have no obligation to explicitly weigh aggravating and mitigating factors. *Williams v. State*, 997 N.E.2d 1154 (Ind. Ct. App. 2013). Consequently, the weight a trial court assigns to each factor is not reviewable for abuse of discretion. *Id.*

[16] Next, Hampsch claims he accepted responsibility for his crime and the court should have found his acceptance to be a mitigating factor. The record demonstrates otherwise. Although Hampsch pleaded guilty, which often

demonstrates acceptance of responsibility, he also attempted to blame his criminal conduct on emotional turmoil resulting from his wife's affair. Furthermore, as Hampsch told the court, he "misinterpreted a girl's crush on me." Tr. p. 49. The record does not clearly support his claim that he accepted responsibility, and the trial court did not abuse its discretion in rejecting this mitigating factor.

[17] Hampsch further argues that the trial court should have considered that he is likely to respond positively to probation or short-term imprisonment. The record reflects that Hampsch groomed G.D. over a period of months, engaged in sexual misconduct with her on several occasions, and after their relationship ended, concealed his crimes for four years. The record further indicates that on one occasion, when the parents of an eighteen-year-old asked Hampsch to counsel her in private about sexual morality, he asked her "if she liked giving blowjobs." Appellant's Confidential App. p. 39. He told her, "I love them!" *Id.* In addition, Hampsch told another church member that he had influence over the member's granddaughter and could "turn her against [the member]." *Id.* at 48. G.D. told the court that she knew Hampsch had sent messages to another girl and had told the girl to delete the messages. Finally, a girl in the youth group received inappropriate texts from Hampsch that left her feeling "violated, confused, dirty, ashamed, and very broken hearted." *Id.* at 45. Based on this record, the court was within its discretion to determine that a lengthy sentence was necessary for Hampsch to change his criminal conduct and refrain from illegal activities with teenage girls.

[18] Hampsch also claims the court ignored the following factors: (1) the crime was the result of circumstances unlikely to recur; and (2) Hampsch's character and attitude indicate that he is unlikely to commit another crime. Hampsch did not present these mitigating factors to the trial court. Failure to present mitigating factors to the trial court waives consideration of the factors on appeal. *Bryant v. State*, 984 N.E.2d 240 (Ind. Ct. App. 2013), *trans. denied*.

[19] Hampsch has failed to demonstrate that the trial court abused its discretion in identifying aggravating and mitigating circumstances.

## 2.

[20] Hampsch argues that his twenty-year sentence is inappropriate because he is not the "worst of the worst." Appellant's Br. p. 22. Article VII, section four of the Indiana Constitution authorizes Indiana's appellate courts to review and revise sentences. That authority is carried out through Indiana Appellate Rule 7(B), which allows an appellate court to revise a sentence that is otherwise authorized by statute if, "after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

[21] The principal role of appellate review under Rule 7(B) is to attempt to leaven the outliers, not to achieve a perceived "correct" result in each case. *Garner v. State*, 7 N.E.3d 1012, 1015 (Ind. Ct. App. 2014). Thus, the key question is not whether another sentence is more appropriate, but whether the sentence imposed in the instant case is inappropriate. *Williams*, 997 N.E.2d 1154.

[22] It is the defendant's burden to persuade us that the sentence is inappropriate. *Id.* Whether a sentence is inappropriate depends upon the culpability of the defendant, the severity of the crime, the damage done to others, and many other circumstances that are present in a given case. *Harman v. State*, 4 N.E.3d 209 (Ind. Ct. App. 2014), *trans. denied.* Thus, when assessing the nature of the offense and the character of the offender, we may look to any factors appearing in the record. *Thompson v. State*, 5 N.E.3d 383 (Ind. Ct. App. 2014).

[23] "When considering the nature of the offense, the advisory sentence is the starting point to determine the appropriateness of a sentence." *Johnson v. State*, 986 N.E.2d 852, 856 (Ind. Ct. App. 2013). At the time Hampsch committed his crime, the advisory sentence for a Class B felony was ten years, with a maximum sentence of twenty years and a minimum sentence of six years. Ind. Code § 35-50-2-5 (West, Westlaw 2005). The trial court imposed the maximum sentence of twenty years.

[24] Turning to the nature of the offense, Hampsch began grooming a thirteen-year-old for sexual intimacy. G.D. was at a fragile point in her life and looked to Hampsch, her church's youth group leader, for guidance as she navigated through adolescence. G.D.'s parents advised Hampsch that she had a crush on him, hoping that he would address her feelings in an appropriate manner.

[25] Instead, Hampsch singled G.D. out for special treatment and communicated with her through a private messaging system that he hid from his wife. He hugged and touched her in ways that made her feel desired and special.

Hampsch also manipulated G.D. through her youth and her religious faith to make her feel as though she was in love with him. Ultimately, during a church trip where fourteen-year-old G.D. was separated from her family, Hampsch arranged for G.D. to meet him in a closet after everyone else had fallen asleep. He inserted his finger in her vagina and made her fondle his penis. She told the police that she was "caught by surprise" by his actions because she was unaware that there was sexual conduct other than "kissing and sex." Appellant's Confidential App. p. 19.

[26] Hampsch violated his position of trust as a supervisory adult and a religious leader with respect to G.D. In addition, his crime had severe deleterious effects upon G.D. above and beyond what might be expected of a minor who was sexually and emotionally abused. While their relationship was ongoing, she felt shame and anxiety and had trouble eating and sleeping. G.D. was still in counseling five years later and reported that she did not trust older men and avoided being alone with them. She expects to carry the trauma with her throughout her life.

[27] Hampsch claims that his sentence will place an undue hardship on his family. Many persons convicted of serious crimes have one or more children, and absent special circumstances, trial courts are not required to find that imprisonment will result in undue hardship. *Reese v. State*, 939 N.E.2d 695 (Ind. Ct. App. 2011), *trans. denied*. Although Hampsch's wife will have to go back to work to support the family, the record is devoid of special circumstances that

would pose an unusually severe hardship to their children and render his sentence inappropriate.

[28] Turning to the character of the offender, Hampsch was a married thirty-four-year-old father of three at the time of sentencing. He correctly notes that he has no criminal record, but his lack of a formal record is more than offset by his grooming of, and repeated sexual contact with, G.D. In addition, the record reflects that Hampsch had inappropriate, private communications with other teenage girls in his care. Under these circumstances, it is difficult to dismiss his misconduct with G.D. as an isolated incident unlikely to recur.

[29] Hampsch expressed remorse at his sentencing hearing, but he had kept silent about his crime for four years, leaving G.D. to suffer in silence under the effects of his misconduct. Furthermore, although Hampsch accepted responsibility for his crime to a certain extent by pleading guilty, he also tried to blame his wife's affair for his misconduct.

[30] Hampsch has failed to demonstrate that his twenty-year sentence is inappropriate in light of the nature of the offense and his character.

[31] For the reasons stated above, we affirm the judgment of the trial court.

[32] Judgment affirmed.

Kirsch, J., concurs.

Brown, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

Derrick Hampsch,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

Court of Appeals Case No.
48A05-1507-CR-979

**Brown, Judge, dissenting**.

I respectfully dissent from the majority opinion that Hampsch's sentence is not inappropriate in light of the nature of the offense and his character. Hampsch was convicted of a class B felony and was sentenced to twenty years executed in the Department of Correction, which was the maximum sentence the trial court was able to impose. Hampsch argues that he is not the "worst of the worst" of offenders. Amended Appellant's Brief at 22. The Indiana Supreme Court has determined that the maximum possible sentence should be reserved for the worst offenders and offenses. *See Buchanan v. State*, 767 N.E.2d 967, 974 (Ind. 2002). This court has stated that, in determining whether a case is among the very worst of offenses and a defendant among the very worst offenders, "[w]e should concentrate less on comparing the facts of this case to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity

of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character." *Brown v. State*, 760 N.E.2d 243, 247 (Ind. Ct. App. 2002).

While Hampsch violated his position of trust to commit the offense and the victim suffers from emotional trauma, the offense did not involve the use of violence and did not result in any physical injuries. Moreover, Hampsch pled guilty in this cause pursuant to a plea agreement which left sentencing open to the court, and the presentence investigation report ("PSI") shows that, other than the pending case in Knox County, Hampsch had no prior criminal history. The PSI further provides that then thirty-four year old Hampsch, is the father of three children, then ages five, eight, and nine years old, and that he is at a low risk to reoffend under the Indiana Risk Assessment System Community Supervision Tool.

For the foregoing reasons, I would find Hampsch's sentence is inappropriate and reduce his sentence to the advisory term of ten years. *See Francis v. State*, 817 N.E.2d 235, 238-239 (Ind. 2004) (concluding with respect to the defendant's conviction for child molesting as a class A felony that a sentence of thirty years, rather than the maximum fifty-year sentence imposed by the trial court, was the appropriate sentence in light of the nature of the offense and the character of the offender where the defendant's criminal history was minimal, the age of the victim had been taken into account to an extent by the class of the felony, and the defendant pled guilty); *Asher v. State*, 790 N.E.2d 567, 572 (Ind. Ct. App. 2003) (holding that the defendant was not "the very worst offender"

because of his lack of criminal history and reducing the defendant's maximum sentence of three years for child seduction as a class D felony to a term of one year); *cf. Kocielko v. State*, 938 N.E.2d 243, 255-256 (Ind. Ct. App. 2010) (holding that the defendant's maximum sentence of twenty years for sexual battery as a class B felony was not inappropriate where the defendant sodomized the victim and, after several days of pain, the victim was required to seek medical treatment for an anal fissure; the defendant had an extensive criminal history, had violated probation on numerous occasions, and was on probation at the time of the offense; and, once incarcerated, the defendant threatened to kill the victim and her mother), *reh'g granted on other grounds*, 943 N.E.2d 1282 (Ind. Ct. App. 2011), *trans. denied*.