FILED
Apr 06 2017, 10:30 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



**ATTORNEY FOR APPELLANT**

Bruce W. Graham
Graham Law Firm P.C.
Lafayette, Indiana

**ATTORNEYS FOR APPELLEE**

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

## I N  T H E
# COURT OF APPEALS OF INDIANA

Jacob R. Lumbley,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

April 6, 2017

Court of Appeals Case No.
79A02-1604-CR-798

Appeal from the Tippecanoe
Superior Court

The Honorable Steven P. Meyer,
Judge

Trial Court Cause No.
79D02-1411-F3-3

**Brown, Judge.**

[1] Jacob R. Lumbley appeals his convictions and sentence for conspiracy to commit robbery as a level 5 felony, robbery as a level 5 felony, and two counts of criminal confinement as level 3 felonies, enhanced by the use of a firearm. Lumbley raises three issues which we revise and restate as:

I.    Whether the trial court erred by enhancing the sentences for his two criminal confinement convictions based upon his use of a firearm;

II.   Whether the trial court erred in ordering that the enhanced sentence for each criminal confinement conviction be served consecutive to each other; and

III.  Whether double jeopardy prohibits his convictions for conspiracy to commit robbery and robbery.

We affirm.

## Facts and Procedural History

[2] During October and November 2014, Lumbley and Miguel Garcia agreed to commit robbery. Lumbley obtained sweatshirts and masks to conceal their identities and a gun. On November 1, 2014, Lumbley and others took property including U.S. currency and merchandise from a Speedway in Tippecanoe County. Lumbley took property from the clerk, Michael Reynolds, by putting him in fear by pointing a Ruger handgun and demanding property. Lumbley confined Reynolds without his consent by using the deadly weapon. Lumbley pointed it and put it close to the clerk's head and face. He also took Reynolds' cellphone so he would not call the police and shared in the proceeds of the robbery.

[3] On November 5, 2014, Lumbley, Garcia, and Tiffany Mounts were together. Lumbley took property, U.S. currency, merchandise, and cellphones from Josh Moore and Megan Vessels, clerks at a Village Pantry, by threatening to use force or putting them in fear. Lumbley also took property of Village Pantry. He possessed a shotgun and confined Moore by "using a firearm and pointing the firearm at him . . . ." Transcript at 48. Specifically, he elevated the gun and pointed it at both Moore and Vessels. Lumbley also confined Vessels.

[4] On November 12, 2014, the State charged Lumbley with: Count I, conspiracy to commit robbery as a level 3 felony; Count II, robbery as a level 3 felony; Count III, criminal confinement as a level 3 felony; Count IV, theft as a class A misdemeanor; Count V, theft as a class A misdemeanor; Count VI, carrying a handgun without a license as a class A misdemeanor; Count VII robbery as a level 3 felony; Count VIII, criminal confinement as a level 3 felony; Count IX, criminal confinement as a level 3 felony; Count X, theft as a class A misdemeanor; Count XI, theft as a class A misdemeanor; and Count XII, carrying a handgun while having a prior felony conviction as a level 5 felony. On December 4, 2014, the State added the following charges: Count XIII, unlawful use of a firearm in the commission of criminal confinement; and Count XIV, unlawful use of a firearm in the commission of criminal confinement. On December 10, 2014, the State filed amendments to the charging information.

[5] On July 28, 2015, Lumbley filed a motion to suppress, and the court denied the motion on August 12, 2015. On September 1, 2015, the day of Lumbley's

scheduled trial, he pled guilty as charged. He admitted that he had been convicted of a felony within the past fifteen years and agreed that he knowingly or intentionally used a firearm in the commission of the criminal confinements at the Speedway and Village Pantry. Specifically, Lumbley's counsel asked him if he confined Reynolds "by using that deadly weapon and not allowing him to leave, correct?" *Id.* at 43-44. Lumbley answered: "Correct." *Id.* at 44. Lumbley's counsel asked him if he confined Moore "by using a firearm and pointing the firearm at him, and not allowing him to move freely or leave, correct?" *Id.* at 48. Lumbley answered: "Yes." *Id.* On cross-examination by the prosecutor, Lumbley admitted that he took a Ruger handgun into the Speedway and pointed it at and put it close to the clerk's head and face. The prosecutor asked Lumbley: "And so, and so you not only possessed but you used that, correct?" *Id.* at 56. Lumbley answered: "Yes." *Id.* He also admitted that he carried a shotgun into the Village Pantry, elevated it, and pointed it at the clerks.

[6] That same day, the court entered an order titled "GUILTY PLEA ORDER (Without Plea Agreement)." Appellant's Appendix III at 142. The court found Lumbley guilty of: amended Count I, conspiracy to commit robbery as a level 3 felony; Count II, robbery as a level 3 felony; Count III, criminal confinement as a level 3 felony; Count IV, theft as a class A misdemeanor; Count V theft as a class A misdemeanor; Count VI, carrying a handgun without a license as a class A misdemeanor; amended Count VII, robbery as a level 3 felony; amended Count VIII, criminal confinement as a level 3 felony; amended Count IX,

criminal confinement as a level 3 felony; amended Count X, theft as a class A misdemeanor; amended Count XI, theft as a class A misdemeanor; Count XII, carrying a handgun while having a prior felony conviction as a level 5 felony; Count XIII, unlawful use of a firearm as a sentencing enhancement; and Count XIV, unlawful use of a firearm as a sentencing enhancement.

[7] On March 28, 2016, for the crimes related to the Speedway gas station, the court sentenced Lumbley to five years for amended Count I, conspiracy to commit robbery reduced to a level 5 felony, five years for Count II, robbery reduced to a level 5 felony, ten years for Count III, criminal confinement as a level 3 felony, one year for Count V, theft as a class A misdemeanor, and five years for Count XII, carrying a handgun while having a prior felony conviction as a level 5 felony. The court ordered that Lumbley be sentenced to five years as charged in Count XIII, a sentencing enhancement, to run consecutive to Count III. It ordered that Counts I, II, V, and XII run concurrent with Count III for a total executed sentence of fifteen years for the crimes related to the Speedway gas station. It ordered that Count IV, theft as a class A misdemeanor, merged into Count II, that Count VI, carrying a handgun without a license, merged into Count XII, and it vacated the previously entered judgments of conviction for Counts IV and VI.

[8] For the crimes involving the Village Pantry gas station, the court sentenced Lumbley to five years for amended Count VII, robbery reduced to a level 5 felony, ten years for amended Count VIII, criminal confinement as a level 3 felony, ten years for amended Count IX, criminal confinement as a level 3

felony, one year for amended Count XI, theft as a class A misdemeanor, and ten years for Count XIV, unlawful use of a firearm, a sentencing enhancement, to be served consecutive to Count VIII. The court ordered that amended Counts VII, IX, and XI run concurrent with amended Count VIII for a total executed sentence of twenty years for crimes related to the Village Pantry gas station. It ordered that amended Count X, theft as a class A misdemeanor, merged into Count VII, and it vacated the previously entered judgment of conviction for Count X.

[9] The court ordered that Count III and amended Count VIII run consecutive to each other for a total executed sentence of thirty-five years in the Department of Correction. It cited the seriousness of the offenses and multiple victims as the reasons for the consecutive sentences.

## *Discussion*

### I.

[10] The first issue is whether the trial court erred by enhancing the sentences for Lumbley's two criminal confinement convictions based upon his use of a firearm. Lumbley argues that the trial court abused its discretion in imposing sentencing enhancements for use of a firearm. He does not dispute that he pointed the firearm at victims and also placed the firearm in proximity to their bodies, but he asserts that he did not "use" the firearm as contemplated by the sentencing enhancement because the weapon was not discharged and there was

no attempt to do so. The State argues that Lumbley cannot raise his challenge to the two firearm enhancements in this direct appeal from his guilty plea.

[11] To the extent Lumbley argues that he did not "use" the firearm as contemplated by the sentencing enhancement, he essentially challenges the factual basis for his guilty plea to the sentencing enhancements, and we conclude that his argument is not properly before us. *See Robey v. State*, 7 N.E.3d 371, 383-384 (Ind. Ct. App. 2014) (citing *Tumulty v. State*, 666 N.E.2d 394 (Ind. 1996), and holding that if the defendant wished to challenge the factual basis underlying his admission to being an habitual offender, he would have to do so in a petition for post-conviction relief), *trans. denied*; *Stanley v. State*, 849 N.E.2d 626, 630 (Ind. Ct. App. 2006) (observing that status as an habitual offender calls for an enhancement of a sentence, that the defendant's admission to being an habitual offender was the equivalent of a guilty plea in which he assented to all of the elements of the habitual offender charge, holding that "[b]ecause [the defendant's] argument concerns the habitual offender determination, as opposed to the sentence imposed upon that determination, it is not properly before us and we cannot, therefore, resolve it on its merits," and dismissing the defendant's guilty plea without prejudice to his right to raise the issue in a subsequent post-conviction proceeding, if he so chooses); *see also Kling v. State*, 837 N.E.2d 502, 504 (Ind. 2005) (holding that a person who pleads guilty cannot challenge the conviction by means of direct appeal but only through a petition for post-conviction relief; one of the things a person gives up by pleading guilty is the right to a direct appeal) (citing *Tumulty*, 666 N.E.2d 394).

[12]   The next issue is whether the trial court erred in ordering that Lumbley's enhanced sentences for his criminal confinement convictions be served consecutive to each other. Lumbley contends that the trial court erred by imposing consecutive sentencing enhancements pursuant to Ind. Code § 35-50-2-11, and that absent specific statutory authority, the sentencing enhancements for use of a firearm cannot be run consecutively, just as habitual offender enhancements cannot.

[13]   The State argues that, because Indiana jurisprudence allows for consecutive sentences where there are multiple victims, the fact that the legislature promulgated the firearm enhancement in light of this jurisprudence implies that it authorized consecutive firearm enhancements where multiple victims were affected. It also argues that the firearm enhancement is qualitatively different from the habitual offender and habitual substance offender enhancements because it is an additional penalty imposed for using a firearm and not a recidivist enhancement that is punishing a defendant for past misbehavior for which he has already received a punishment.

[14]   While a defendant cannot challenge a conviction following a guilty plea on direct appeal, a defendant is entitled to contest on direct appeal the merits of a trial court's sentencing discretion. *See Mapp v. State*, 770 N.E.2d 332, 334 n.1 (Ind. 2002). We note that the sentences which were enhanced dealt with the separate offenses. Specifically, Count III, criminal confinement while armed

with a deadly weapon as a level 3 felony, occurred at the Speedway on November 1, 2014, and Count VIII, criminal confinement with a deadly weapon as a level 3 felony, occurred at the Village Pantry on November 5, 2014. At the time of the offenses, Ind. Code § 35-50-1-2(e) provided: "If the factfinder determines under IC 35-50-2-11 that a person used a firearm in the commission of the offense for which the person was convicted, the term of imprisonment for the underlying offense and the additional term of imprisonment imposed under IC 35-50-2-11 must be served consecutively."[1]

[15] Lumbley cites *Breaston v. State*, 907 N.E.2d 992 (Ind. 2009), in which the Indiana Supreme Court addressed whether it was proper for the defendant to receive consecutive habitual offender enhancements following unrelated trials. The Court observed that Ind. Code § 35-50-1-2 provides that a court has discretion to determine whether terms of imprisonment are to be served concurrently or consecutively. 907 N.E.2d at 994. It noted that it had previously discussed the policies that distinguish the power to impose consecutive sentences and the power to enhance sentences based on a finding of habitual offender status as follows:

> The provision appears unlimited in scope, applying to the class of all sentences. Yet the power to order consecutive sentences is subject to the rule of rationality and the limitations in the constitution. The sentence enhanced under the habitual offender

---

[1] Subsequently amended by Pub. L. No. 238-2015, § 16 (eff. July 1, 2015); Pub. L. No. 13-2016, § 18 (eff. July 1, 2016).

statute is a special statutory one. It can have the dramatic effect of increasing a single sentence from two years to half a lifetime. A basis for such a gross impact is the existence of the two prior unrelated felony convictions and sentences, and the dangerous nature of the offender which they bespeak. A basis for the gross impact which consecutive sentences may have is, by contrast, the moral principle that each separate and distinct criminal act deserves a separately experienced punishment. Furthermore the habitual offender status determination carries a more binding effect upon the sentence tha[n] does the determination of multiple criminal acts. Therefore, the purpose and process of the felony habitual offender statute has special and distinct dimensions.

In sum, it is apparent, from a study of the present statutes, that such statutes are silent on the question of whether courts have the authority to require habitual offender sentences to run consecutively, when engaged in the process of meting out several sentences. In the absence of express statutory authorization for such a tacking of habitual offender sentences, there is none.

907 N.E.2d at 994 (*quoting Starks v. State*, 523 N.E.2d 735, 736-737 (Ind. 1988)).

[16] The Court further observed that the relevant portions of the consecutive sentencing statute had remained unchanged in the more than two decades since *Starks* and stare decisis and legislative acquiescence supported the result that a trial court cannot order consecutive habitual offender sentences. *Id.* at 994-995. The Court noted that "[i]n *Starks*, we recognized that the 'special and distinct dimensions' of the habitual offender enhancement precludes a trial court from ordering habitual offender sentences to run consecutively." *Id.* at 995. It concluded that the trial court erred when it ordered the habitual offender

sentences to run consecutively. *Id.* In *Starks*, the Court stated that it had previously "sanctioned the process of enhancing two sentences for aggravating circumstances and then requiring the two sentences to be served consecutively." 523 N.E.2d at 736 (citing *Smith v. State*, 474 N.E.2d 71 (Ind. 1985)).

We conclude that the firearm enhancements do not have the special and distinct dimensions of habitual offender enhancements and are similar to the finding of aggravating circumstances for separate offenses. We further observe that Ind. Code § 35-50-2-11 was amended by Pub. L. No. 238-2015, § 18, effective July 1, 2015, in part to designate the former subsection (e) as subsection (g) and to add subsection (i) which states: "A person may not be sentenced under subsections (g) and (h) for offenses, felonies, and misdemeanors comprising a single episode of criminal conduct." The addition of subsection (i) provides further support for the conclusion that the legislature intended for an enhancement under the statute to support consecutive sentences and that subsection (i) is intended to prevent the imposition of consecutive sentences when a single episode of criminal conduct is present. We conclude that the trial court did not abuse its discretion by enhancing the two separate criminal confinement convictions and ordering that they be served consecutive to each other.

III.

The next issue is whether double jeopardy prohibits Lumbley's convictions for conspiracy to commit robbery and robbery. Lumbley appears to argue that his

convictions on Count I, conspiracy to commit robbery as a level 5 felony, Count II, robbery as a level 5 felony, and Count VII, robbery as a level 5 felony, violate the Double Jeopardy Clause of the Indiana Constitution, which provides: "No person shall be put in jeopardy twice for the same offense." IND. CONST. art. 1, § 14. He asserts that Count I does nothing more than summarize the events of the robberies which occurred at the Speedway gas station on November 1, 2014, and the Village Pantry on November 5, 2014. He concedes that the elements of conspiracy to commit robbery and robbery are not the same as each requires proof of facts which the other does not but argues that the actual evidence which supports his conviction for Count I, conspiracy to commit robbery, is identical to the evidence used to establish each robbery. The State argues that the conspiracy was completed before the robbery and the actual facts comprising the essential elements of the conspiracy were completed before all of the actual facts comprising the essential elements of the robbery were completed or even begun.

[19]   We again note that a person who pleads guilty cannot challenge the conviction by means of direct appeal but only through a petition for post-conviction relief. *See Kling*, 837 N.E.2d at 504. In *Mapp*, the Indiana Supreme Court observed that the defendant contended that he was charged twice for essentially the same criminal conduct and that the State contended there was evidence to show two separate charges were sustainable. 770 N.E.2d at 334. The Court observed that this was the kind of factual dispute that a post-conviction trial court is suited to resolving and that an appellate court is not. *Id.* It stated that because the State

did not argue that the appeal should be dismissed as improper, it elected to address the claim on the merits. *Id.* Similarly, here, the State makes no argument that Lumbley's appeal should be dismissed with respect to his double jeopardy claim. Thus, in light of *Mapp*, we elect to address the merits of Lumbley's claim.

[20] "Indiana's Double Jeopardy Clause . . . prevent[s] the State from being able to proceed against a person twice for the same criminal transgression." *Hopkins v. State*, 759 N.E.2d 633, 639 (Ind. 2001) (quoting *Richardson v. State*, 717 N.E.2d 32, 49 (In d. 1999)). The Indiana Supreme Court has held that "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson*, 717 N.E.2d at 49. In applying the actual evidence test, a defendant must demonstrate and a reviewing court must conclude that there is a reasonable possibility that the evidentiary facts used by the factfinder to establish the essential elements of an offense for which the defendant was convicted or acquitted may also have been used to establish all the essential elements of a second challenged offense. *Hines v. State*, 30 N.E.3d 1216, 1222 (Ind. 2015). The Indiana Supreme Court has held that "reasonable possibility" requires "substantially more than a logical possibility." *Lee v. State*, 892 N.E.2d 1231, 1236 (Ind. 2008). The existence of a reasonable possibility turns on a practical assessment of whether the fact finder may have latched on

to exactly the same facts for both convictions. *Garrett v. State*, 992 N.E.2d 710, 720 (Ind. 2013). Generally, we evaluate the evidence from the jury's perspective and may consider the charging information, jury instructions, and arguments of counsel. *Id.*

[21] The amended charging information for Count I alleged:

> During October and November, 2014, in Tippecanoe County, State of Indiana, Miguel Garcia, Jacob Rufus Lumbley, Tiffany Dawn Mounts and Aaron David Arnold did, with the intent to commit Robbery, agree to commit the offense of Robbery, and one or more of the following overt acts were performed in furtherance of said agreement, to wit: On one or more occasions, Garcia and Lumbley went to businesses while armed with deadly weapons; on one or more occasions, Garcia, Lumbley, and/or Mounts obtained and wore hooded sweatshirts and masks to conceal their identities when they entered businesses they were robbing; on one occasion Arnold provided a shotgun for use in committing a robbery; on one occasion Arnold acted as a lookout during the robbery; on one or more occasions, Garcia, Lumbley and/or Mounts took property from said businesses; on one or more occasions, Garcia or Lumbley would take or damage phones to prevent victims from calling police; on one or more occasions, Garcia, Lumbley, and/or Mounts would share in the proceeds of said robberies; further, said offenses were committed while armed with a deadly weapon, to wit: firearms and/or knives.

Appellant's Appendix Volume II at 70. Thus, the charging information included the overt act of obtaining hooded sweatshirts and masks prior to the actual robberies. Further, at the hearing, Lumbley testified that he agreed with others to commit the offense of robbery, that one or more overt acts were

performed in furtherance of the agreement, that he obtained sweatshirts and masks to conceal their identities, that he obtained a gun, and that Arnold provided him with the shotgun.

[22] The offenses of conspiracy and the robberies could have been established by "separate and distinct facts." *Richardson*, 717 N.E.2d at 53. To find a double jeopardy violation, we must conclude there is a "reasonably possibility" the facts used to establish the essential elements of one offense may also have been used to establish the essential elements of a second offense. *Garrett*, 992 N.E.2d at 719. Since a "reasonable possibility" requires "substantially more than a logical possibility," *Lee*, 892 N.E.2d at 1236, we cannot conclude Lumbley's convictions violate double jeopardy. *See Kunberger v. State*, 46 N.E.3d 966, 972 (Ind. Ct. App. 2015) (addressing a defendant's double jeopardy claim following a guilty plea and holding that we were left with no basis on which to conclude there was a double jeopardy violation under the actual evidence test).

## Conclusion

[23] For the foregoing reasons, we affirm Lumbley's convictions and sentence.

[24] Affirmed.

Robb, J., and Mathias, J., concur.