# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 03 2019, 8:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Daniel Hageman
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Josiah Swinney
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Wilmer Francisco Figueroa-Estrada, <br><br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br><br> *Appellee-Plaintiff* | October 3, 2019 <br><br> Court of Appeals Case No. 19A-CR-336 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Lisa F. Borges, Judge <br><br> Trial Court Cause No. 49G04-1608-F2-31462 |

**Crone, Judge.**

# Case Summary

Wilmer Francisco Figueroa-Estrada pled guilty to two counts of level 2 felony kidnapping, three counts of level 2 felony criminal confinement, level 6 felony resisting law enforcement, class A misdemeanor resisting law enforcement, and class A misdemeanor carrying a handgun without a license. He now appeals his convictions on the basis of the continuous crime doctrine. He also contends that his seventy-five-year executed sentence is inappropriate in light of the nature of his offenses and his character. We affirm.

# Facts and Procedural History

On August 6, 2016, Estrada approached Anahi Dominguez in a grocery store parking lot and ordered her into his vehicle at gunpoint. After driving her around for a while, he took her to a wooded area next to the English Village Apartments and tied her to a tree with a white rope. He took her cell phone and texted her family, demanding a $5000 ransom and ordering them not to notify authorities. The family paid the ransom and then notified police. Officers later found Dominguez in her vehicle, and she took them to the tree that Estrada had tied her to, which she could identify by markings she had made on the ground. She told the officers that her assailant had worn black gloves with yellow stripes and a bandana on his face. He gagged her with a bandana as well. She recalled that he had smoked a cigarette and thrown the butt on the ground. Police located the cigarette butt and submitted it for testing.

[3] Four days later, Estrada approached Helen Mercado in the parking lot of her apartment complex. He pointed a firearm at her and ordered her into his vehicle. As he drove her around, he used her cell phone to contact her mother. He demanded $8000 in exchange for Mercado's safe return and threatened to kill Mercado if her family notified authorities. Mercado's family notified authorities and contacted Mercado's friend Jenny, with whom Mercado had shared her cell phone location, to ascertain whether Jenny could locate Mercado's phone. Jenny reported that the last pinged location was the English Village Apartments.

[4] Officer Eric Baker surveilled the English Village parking lot. He saw an SUV that failed to signal a turn, and he activated his lights and siren to conduct a traffic stop. The driver, Estrada, did not stop. A cross-county, high-speed chase ensued, and backup officers were dispatched. Eventually, the SUV crashed into a utility pole, and Estrada exited the vehicle and fled on foot, with officers in pursuit.

[5] The officers chased Estrada behind a house, where they found him holding bystander Mark Steinhardt in a headlock with a putty knife at his throat. They tased and apprehended Estrada. In the crashed SUV, they found Mercado, who was injured and bleeding. They also discovered a loaded handgun and magazine on the driver's side floor. A subsequent search of the vehicle produced a white rope, two bandanas, a pair of black and yellow gloves, and various documents and photos related to Estrada. Police arrested Estrada and

collected a buccal swab, which contained DNA that matched the DNA on the previously recovered cigarette butt.

[6] The State charged Estrada with two counts of level 2 felony kidnapping, three counts of level 2 felony criminal confinement, level 6 felony resisting law enforcement (by vehicle), class A misdemeanor resisting law enforcement (on foot), and class A misdemeanor carrying a handgun without a license. Estrada pled guilty to all counts. At the guilty plea hearing, the trial court advised him that by pleading guilty, he was waiving his right to appeal his convictions, and he affirmed that he understood. The trial court sentenced him to an aggregate seventy-five-year executed term. This included twenty-five-year terms for each of his five level 2 felony convictions, three to run consecutive (kidnapping of Mercado and Dominguez and criminal confinement of Steinhardt) and two to run concurrent (criminal confinement of Mercado and Dominguez). For his level 6 felony and two class A misdemeanor convictions, the court imposed concurrent one-year terms. Estrada now appeals his convictions and sentence. Additional facts will be provided as necessary.

## Discussion and Decision

## Section 1 – By pleading guilty, Estrada waived his right to challenge his convictions.

[7] Estrada challenges his convictions for criminal confinement of Dominguez and Mercado as well as his class A misdemeanor resisting law enforcement conviction on grounds of the continuous crime doctrine, which is a species of

common law double jeopardy. *Hines v. State*, 30 N.E.3d 1216, 1218 (Ind. 2015) The State contends that Estrada waived his right to challenge his convictions on direct appeal by electing to plead guilty. When a person elects to plead guilty rather than to stand trial on the charges against him, he gives up certain statutory and constitutional rights. *Tumulty v. State*, 394, 395 (Ind. 1996). When a defendant pleads guilty, the trial court is obliged to inform him of the rights that he is waiving and to determine that the waiver of these rights is "knowingly and intelligently given." *Id*. (quoting *Davis v. State*, 446 N.E.2d 1317, 1321 (Ind. 1983)). One such right is the right to challenge his convictions on direct appeal. *See id*. ("a conviction based on a guilty plea may not be challenged by … direct appeal.") (quoting *Weyls v. State*, 266 Ind. 301, 302, 362 N.E.2d 481, 482 (1977)). This includes the appeal of convictions on double jeopardy grounds. *Mapp v. State*, 770 N.E.2d 332, 334 (Ind. 2002).

[8] Estrada does not claim that his plea was involuntary or that the trial court inadequately advised him concerning the legal consequences of his plea. Rather, he now attempts to challenge two of his criminal confinement convictions and one of his resisting law enforcement convictions based on the continuous crime doctrine. *See Hines*, 30 N.E.3d at 1219 (continuous crime doctrine applies only where defendant's conduct amounts only to a single chargeable crime). The analysis applied to these types of claims is extremely fact-sensitive and requires a fully developed factual record. We simply do not have a developed factual record before us, and even if we did, the *Tumulty* court rejected the notion that the appealability of claims after a guilty plea should turn

on the adequacy of the factual record from the guilty plea proceedings. *See Tumulty*, 666 N.E.2d at 396 (supreme court's express rejection of this Court's holding that defendant should be permitted to appeal from guilty plea whenever record of guilty plea is adequate to resolve issue being appealed).

In short, Estrada waived his right to challenge his convictions by pleading guilty and is now limited to challenging his convictions by filing a petition for post-conviction relief pursuant to Indiana Post-Conviction Rule 1. *Tumulty*, 666 N.E.2d at 396; *Lumbley v. State*, 74 N.E.3d 234, 241 (Ind. Ct. App. 2017), *trans. denied*.

## Section 2 – Estrada has failed to meet his burden of demonstrating that his sentence is inappropriate.

Estrada is not foreclosed from challenging his sentence, and he asks that we reduce his sentence pursuant to Indiana Appellate Rule 7(B), which states that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [this] Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." "Sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). When a defendant requests appellate review and revision of his sentence, we have the power to affirm or reduce the sentence. *Akard v. State*, 937 N.E.2d 811, 813 (Ind. 2010). In conducting our review, our principal role is to leaven the outliers, focusing on the length of the aggregate sentence and how it is to be served. *Bess v. State*, 58 N.E.3d 174, 175 (Ind.

2016); *Foutch v. State*, 53 N.E.3d 577, 580 (Ind. Ct. App. 2016). This allows for consideration of all aspects of the penal consequences imposed by the trial court in sentencing, i.e., whether it consists of executed time, probation, suspension, home detention, or placement in community corrections, and whether the sentences run concurrently or consecutively. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). Even so, our "review should focus on the forest – the aggregate sentence – rather than the trees – consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Cardwell*, 895 N.E.2d at 1225. We do "not look to see whether the defendant's sentence is appropriate or if another sentence might be *more* appropriate; rather, the test is whether the sentence is 'inappropriate.'" *Foutch*, 53 N.E.3d at 581 (quoting *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied* (2014)). The defendant bears the burden of persuading this Court that his sentence meets the inappropriateness standard. *Bowman v. State*, 51 N.E.3d 1174, 1181 (Ind. 2016).

[11] In considering the nature of Estrada's offenses, "the advisory sentence is the starting point the Legislature has selected as an appropriate sentence." *Green v. State*, 65 N.E.3d 620, 637-38 (Ind. Ct. App. 2016), *trans. denied* (2017). When determining the appropriateness of a sentence that deviates from an advisory sentence, we consider whether there is anything more or less egregious about the offense as committed by the defendant that "makes it different from the typical offense accounted for by the legislature when it set the advisory sentence." *Holloway v. State*, 950 N.E.2d 803, 807 (Ind. Ct. App. 2011).

[12] The trial court sentenced Estrada to an aggregate seventy-five-year executed term. Each of his five level 2 felonies is subject to a sentencing range of ten to thirty years, with a seventeen and one-half-year advisory term. Ind. Code § 35-50-2-4.5. His level 6 felony is subject to a sentencing range of six months to two and one-half years, with a one-year advisory term. Ind. Code § 35-50-2-7(b). For each of his two class A misdemeanors, his sentence may not exceed one year. Ind. Code § 35-50-3-2. Because the length of Estrada's sentence is largely attributable to the court's imposition of consecutive sentences on three of his five level 2 felony convictions, we must analyze it with reference to Indiana Code Section 35-50-1-2. Two of his consecutive twenty-five-year sentences were imposed for kidnapping, which the statute lists as a crime of violence, not subject to any maximum consecutive term. Ind. Code § 35-50-1-2(a)(8), -(d). The third twenty-five-year consecutive term was for level 2 felony criminal confinement with the use of a weapon. All other terms were concurrent. His total sentence exposure was more than 150 years.

[13] Estrada's offenses were serious and dangerous. His five level 2 felony convictions include two for kidnapping, which involves the knowing or intentional removal of another person by force or threat of force from one place to another with intent to obtain ransom. Ind. Code § 35-42-3-2(a), -(b)(4)(A). His three level 2 felony criminal confinement convictions involve the knowing or intentional confinement of another without consent with intent to obtain ransom (Dominguez and Mercado) or intent to use the person as a shield or hostage (Steinhardt). Specifically, Estrada's offenses involved a high level of

danger and trauma, not merely for the victims but also for their families. Dominguez was grocery shopping when Estrada forced her into his vehicle at gunpoint and drove away. When he finally stopped and took her to a wooded area, he tied her to a tree and used her phone to demand a $5000 ransom from her family. Throughout the ordeal, he was armed with a handgun (for which he had no license) and made threats on her life.

[14] Despite having extracted money from Dominguez's family, Estrada still was not satisfied. Four days later, he again kidnapped a young woman at gunpoint. This time the victim, Mercado, was outside her apartment when Estrada forced her into his vehicle at gunpoint. Again, he traumatized his victim by driving her around and demanding ransom on threat of death. When police located his vehicle, he led the officers on a high-speed chase ending in a one-car crash, with Mercado being thrashed around, bloodied, and injured. With no regard for her condition, Estrada fled the crash scene on foot. He eluded the pursuing officers and eventually took a hostage, Steinhardt, whom he held in a headlock with a putty knife at his throat.

[15] All three of Estrada's victims were random strangers who were minding their own business at the time he accosted/abducted them. In each instance, he used a weapon, and he traumatized and endangered them. In the case of Mercado, he caused her to sustain injuries that could have proved fatal when he struck a utility pole after leading police on an eighty-miles-per-hour chase. Estrada's conduct exceeded the requirements for conviction and does not militate toward a reduced sentence.

[16] Nor does Estrada's character. We conduct our review of his character by engaging in a broad consideration of his qualities. *Aslinger v. State*, 2 N.E.3d 84, 95 (Ind. Ct. App. 2014), *clarified on other grounds on reh'g*, 11 N.E.3d 571. "When considering the character of the offender, one relevant fact is the defendant's criminal history." *Garcia v. State*, 47 N.E.3d 1249, 1251 (Ind. Ct. App. 2015), *trans. denied* (2016). Estrada does not appear to have a juvenile criminal record; however, the trial court noted that there really was no way of knowing his juvenile criminal history, since Estrada immigrated from Honduras in his late teens. Tr. Vol. 2 at 30. Estrada committed the current offenses at age nineteen, and at the time of his plea and sentencing, he had pending charges of level 3 felony rape (two counts), level 6 felony intimidation, and misdemeanor battery and domestic battery. Estrada admitted to using alcohol regularly, sometimes to the point of suffering blackouts, and reported that he had consumed "alot [sic] of whiskey" on the day of his most current offenses and arrest. Appellant's App. Vol. 2 at 132. He also reported using illegal drugs, including cocaine and marijuana. His overall risk assessment score put him in the "HIGH risk category to reoffend." *Id*. He indicated to Mercado that he had her photograph and had been stalking her for two days before he kidnapped her. *Id*. at 27. When asked about his reason for kidnapping women for ransom, his gave conflicting stories, including working for a "Boss" and obtaining ransom to support his mother. *Id*.

[17] Estrada points to his remorse, his guilty plea, and his difficult childhood as positive reflections of his character. At sentencing, he expressed his remorse by

saying, "I also want to extend a special apology to the victims that I offended." Tr. Vol. 2 at 23. The trial court did not place emphasis on the apology but simply found that he took responsibility by pleading guilty. We are not in a position to discern Estrada's sincerity and therefore defer to the trial court, as it was uniquely situated to observe and best determine whether his remorse was genuine. *Phelps v. State*, 969 N.E.2d 1009, 1020 (Ind. Ct. App. 2012), *trans. denied*. As for his difficult childhood, he has failed to demonstrate how it reflects positively on his character.

[18] While we are mindful of Estrada's troubled upbringing and distance from his family support system, we find that he has failed to meet his burden of demonstrating that his sentence is inappropriate. As such, we affirm his sentence.

[19] Affirmed.

Baker, J., and Kirsch, J., concur.